THERIOT, J.
| gThis suit arises out of injuries suffered by a restaurant patron who became ill after eating raw oysters. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Spitale’s Bar, Inc. (“Spitale’s”) operates a restaurant and bar in Amite, Louisiana which serves raw oysters. On May 15, 2004, Cary Devon Travis ate two raw oysters at Spitale’s. After consuming the oysters, Mr. Travis, who suffers from nonalcoholic steato hepatitis (NASH), became ill due to vibrio vulnificus bacteria[1] contained in the oysters. Mr. Travis was hospitalized on several occasions after consuming the oysters and ultimately required a liver and kidney transplant.
The Louisiana Sanitary Code requires all establishments that sell or serve raw oysters to display warning signs at the point of sale to alert consumers of the risk associated with the consumption of raw oysters by those with chronic illness of the liver, stomach, or blood, or those with immune disorders. La. Admin. Code tit. 51, pt. IX, § 319(D). The Louisiana Department of Health and Hospitals (“DHH”) is responsible for inspecting these establishments for compliance with the Sanitary Code. La. R.S. 40:4.
On May 15, 2004, the date on which Mr. Travis ate the two raw oysters at Spitale’s, there were no statutorily-mandated signs in the restaurant area of Spitale’s, nor were there any warnings printed on the menus. The only warning sign in Spitale’s was in the bar area, which was separate from the restaurant area where Mr. Travis was seated.
Mr. Travis filed suit for damages against Spitale’s, its insurers, and DHH for failing to warn him of the dangers of consuming raw oysters and Rfor DHH failing to inspect Spitale’s for the warnings. Mr. Travis settled his claim against Spitale’s prior to trial.
*1124 Prior to trial, the parties entered the following stipulation into the record:
1. The Louisiana Sanitary Code, Chapter 11, # 1109, requires the following warning:
“All establishments that sell or serve raw oysters must display signs, menu notices, table tents, or other clearly visible messages at the point of sale with the following wording:
THERE MAY BE A RISK ASSOCIATED WITH CONSUMING RAW SHELLFISH AS IS THE CASE WITH OTHER RAW PROTEIN PRODUCTS. IF YOU SUFFER FROM CHRONIC ILLNESS OF THE LIVER, STOMACH OR BLOOD OR HAVE OTHER IMMUNE DISORDERS, YOU SHOULD EAT THESE PRODUCTS FULLY COOKED.”
2. On the day of the incident, there were no signs as required by the aforementioned Sanitary Code provisions on the Spitale’s restaurant menu.
3. On the day of the incident, there were no signs as required by the aforementioned Sanitary Code on the Spitale’s restaurant walls.
4. On the day of the incident, the only sign as required by the aforementioned Sanitary Code provisions in Spitale’s was located in the bar area. Travis was eating in the restaurant area of Spitale’s which was in the same building as the bar but had a wall separating the bar from the restaurant with a door way leading from the bar into the restaurant.
The parties also stipulated to the amount of Mr. Travis’s medical bills; however, DHH did not stipulate that all of those medical expenses were incurred as a result of Mr. Travis’s oyster consumption.
After a jury trial, the jury returned a verdict in favor of Mr. Travis, finding that DHH breached its duty to enforce the Sanitary Code and that DHH’s breach was a cause in fact of Mr. Travis’s injuries. The jury also found that Mr. Travis contributed to his own injuries, and assigned fault as Lfollows: 40% to DHH, 33% to Spitale’s, and 27% to Mr. Travis. The jury awarded Mr. Travis $350,000.00 for his past medical expenses, $140,000.00 for his past lost wages, $60,000.00 for his past physical pain and suffering, $35,000.00 for his past mental anguish and emotional distress, and $100,000.00 for permanent injury. The jury declined to make any award for Mr. Travis’s future medical expenses, future lost wages, future physical pain and suffering, future mental anguish and emotional distress, and for his loss of enjoyment of life. The trial court rendered judgment against DHH in accordance with the jury’s verdict in the total amount of $274,000.00, plus legal interest. DHH filed a motion for new trial or for remitti-tur, which was denied by the court.
Both DHH and Mr. Travis have appealed the trial court judgment. DHH argues on appeal that the trial court erred in refusing to instruct the jury on the law of superseding negligence and in limiting its cross-examination of Mr. Travis. DHH also argues that the jury’s allocation of fault, as well as its awards for past medical expenses and past lost wages, were erroneous and contrary to the evidence. Mr. Travis assigns as error the jury’s allocation of fault, as well as the amount of the individual items of damages. Mr. Travis also argues that the jury abused its discretion by reducing the damage awards by his comparative fault, since the jury had already taken this reduction into account when it assigned to him a percentage of fault on the verdict, thus resulting in an inappropriate “double reduction.”
*1125 DISCUSSION

Jury Instructions

DHH alleges that the court erred in failing to properly instruct the jury on the law of superseding negligence. DHH made a request in accordance Rwith La. C.C.P. art. 1793(A)[2] for the following instruction to be given to the jury:
Superceding [sic] Cause: When an incident giving rise to injuries results from two acts of negligence, one more remote and one occurring later, the occurrence of the later act prevents the finding of liability for the person responsible for the more remote act. The subsequent action of the other persons or entities are intervening acts of negligence which the law regards as superceding [sic] the negligent act of the first person who acted.
A jury charge conference was held in accordance with La. C.C.P. art. 1793. Over DHH’s objection, the trial court declined to give the requested instruction, and charged the jury as follows:
Among the questions that we will be asking you to answer are some which concern the degree of fault which is to be assigned to the various parties in this case. Where there are multiple parties in a case alleged to be at fault as we have here, the law requires that you assign degrees of percentages of fault which add up to 100 percent responsibility for this incident. So my questions will be asking you to assign a percentage of fault, if any, to the plaintiff, Louisiana Department of Health and Hospitals or Spitale’s.... If you are satisfied that the plaintiff has established [causation and damages], then the plaintiff is entitled to recover and you should return a verdict for the plaintiff, unless the defendant has prove [sic] by a preponderance of the evidence that the plaintiff contributed to his own injury by his own substandard conduct. If the defendant has proved that the plaintiff was at fault himself and his fault contributed to his own injury, then you should assign a percentage of fault or responsibility to the plaintiff on the forms that I will provide to you.
In a jury trial, the trial court is obligated to give instructions that properly reflect the law applicable in light of the pleadings and facts in each case. Hymel v. HMO of Louisiana, Inc., 06-0042 (La.App. 1 Cir. 11/15/06), 951 So.2d 187, 198, writ denied, 06-2938 (La.2/16/07), 949 So.2d 425. Adequate jury instructions are those instructions that fairly and reasonably point out the issues presented by the pleadings and evidence and that provide | ^correct principles of law for the jury to apply to those issues. Id. Whether or not to include a requested jury instruction is a matter within the wide discretion of the trial court and will not be overturned on appeal absent an abuse of that discretion. Gardner v. Griffin, 97-0379 (La.App. 1 Cir. 4/8/98), 712 So.2d 583, 586.
When assessing an allegedly erroneous jury instruction, it is the duty of the reviewing court to evaluate such impropriety in light of the entire jury charge to determine if it adequately provides the correct principles of law as applied to the issues and whether they adequately guided the jury in its deliberation. Hymel, 951 So.2d at 198. An appellate court must exercise great restraint before overturning a jury verdict on the suggestion that the *1126 jury instructions were so erroneous as to be prejudicial. Id.
DHH argues that the court’s failure to give the requested jury instruction was a fatal error of law because the instruction would have allowed the jury to consider whether DHH’s prior negligent act in failing to properly inspect Spitale’s was completely superseded by Mr. Travis’s failure to take personal responsibility for his health, follow his doctor’s instructions, and avoid raw seafood. However, the instructions given by the court informed the jury that they were permitted to assign fault to Mr. Travis for his role in causing his own injuries if they believed that his actions played a part in causing his injuries. The jury did in fact assign a percentage of fault to Mr. Travis, evidencing their understanding of this instruction. We find that the court’s instructions fairly and reasonably pointed oht the issues presented to the jury and provided correct principles of law for the jury to apply. Thus, we cannot say that the court committed reversible error in refusing to give DHH’s requested jury instruction. This assignment of error is without merit.
| limitation of Cross Examination
DHH argues that the trial court erred in limiting its cross-examination of Mr. Travis. At trial, Mr. Travis testified that he had no knowledge and had never been told by anyone, including his doctors, that he should not eat raw oysters because of his liver disease. Mr. Travis also testified that he was a regular patron of Spi-tale’s restaurant and that he occasionally walked through the bar on his way into the restaurant. DHH attempted to ask Mr. Travis whether he had ever seen a sign in the bar area warning people with certain medical conditions not to eat raw oysters. Mr. Travis’s counsel objected to the question, arguing that DHH was trying to get around their pre-trial stipulation regarding the absence of signs. The court originally overruled the objection, saying that DHH could question Mr. Travis about whether or not he ever saw the sign in the bar area, as long as DHH did not attempt to back off of their stipulation and argue that the presence of a sign in the bar relieved DHH of liability for failing to inspect the restaurant area. However, after further consideration, the court sustained the objection and DHH was not permitted to question Mr. Travis about whether he had ever seen a warning sign in the bar area of Spitale’s. On appeal, DHH argues that the question was relevant to the issue of his personal knowledge and credibility, and further that it was an abuse of discretion for the trial court to exclude the evidence.
|RGenerally, the trial court is granted broad discretion on its evidentiary rulings, and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. Turner v. Ostrowe, 01-1935, p. 5 (La.App. 1 Cir. 9/27/02), 828 So.2d 1212, 1216, writ denied, 02-2940 (La.2/7/03), 836 So.2d 107. Except as otherwise provided by law, all relevant evidence is admissible. La. C.E. art. 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. La. C.E. art. 401. Whether evidence is relevant is within the discretion of the trial court, and its ruling will not be disturbed on appeal in the absence of a clear abuse of that discretion. Boudreaux v. Mid-Continent Cas. Co., 05-2453, p. 8 (La.App. 1 Cir. 11/3/06), 950 So.2d 839, 845, writ denied, 06-2775 (La.1/26/07), 948 So.2d 171.
The court was correct in its initial ruling that DHH’s question to Mr. Travis concerning whether or not he had ever seen a warning sign in Spitale’s bar does not conflict with DHH’s stipulation *1127 concerning the absence of signs in the restaurant or on the menu. DHH stipulated that the law requires signs at the point of sale, that the only sign in Spitale’s on the date of the incident was in the bar area, and that Mr. Travis ate in the restaurant area (which had no signs) on the day of the incident. Mr. Travis had testified that he had walked through the bar area in Spitale’s in the past. Therefore Mr. Travis’s testimony about his personal knowledge of the dangers of eating raw oysters prior to this incident was relevant to the issue of Mr. Travis’s share of fault. The trial court erred in sustaining the objection. However, the harmless error analysis applies to erroneous evidentiary rulings on appeal. See Thongsavanh v. Schexnayder, 09-1462, p. 7 (La.App. 1 Cir. 05/7/10), 40 So.3d 989, 995, writ denied, 10-1295 (Laj9/24/10),9 45 So.3d 1074. The trial court’s error in excluding this testimony was harmless because the jury received other evidence indicating that Mr. Travis may have been aware of the risk of consuming raw oysters, and the jury was apparently persuaded by that evidence given its conclusion that Mr. Travis was comparatively negligent. This assignment of error has no merit.

Apportionment of Fault

Both DHH and Mr. Travis have appealed the jury’s apportionment of fault. While DHH believes that the jury should have assigned 100% of the fault to Mr. Travis, Mr. Travis believes that the jury erred in assigning any fault at all to him.
The allocation of fault between comparatively negligent parties is a finding of fact. Sims v. State Farm Auto. Ins. Co., 981613, p. 2 (La.3/2/99), 731 So.2d 197, 199. In apportioning fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages claimed. Gibson v. State Through Dept. of Transp. and Development, 95-1418, p. 12 (La.App. 1 Cir. 4/4/96), 674 So.2d 996, 1005 (citing Campbell v. Louisiana Dept. of Transp. and Development, 94-1052, p. 7 (La.1/17/95), 648 So.2d 898, 902, writs, denied, 96-1862, 96-1895, 96-1902 (La.10/25/96), 681 So.2d 373, 681 So.2d 374). We review a fact finder’s apportionment of fault under the manifest error-clearly wrong standard of review. Clement v. Frey, 951119, 951163, p. 7 (La.1/16/96), 666 So.2d 607, 610.
The evidence presented at trial clearly supported the jury’s conclusion that the parties were comparatively negligent and that an assignment of some degree of fault to all of the parties was appropriate. There was evidence presented at trial, which the jury in its weighing of the evidence was free to accept or reject, that Mr. Travis knew or should have known of the dangers |inof eating raw oysters and chose to take that risk. There was also evidence in the form of DHH’s stipulation that DHH failed in its duty to inspect Spitale’s to ensure that the appropriate warning signs were displayed. Upon a thorough review of the record, we cannot say the jury’s apportionment of fault was manifestly erroneous or clearly wrong. These assignments of error by DHH and Mr. Travis are both without merit.

Damages

The remaining assignments of error by both parties concern the amount of the damage awards. It is well settled that a judge or jury is given great discretion in its assessment of quantum, of both general and special damages. Guillory v. Lee, 090075, p. 14 (La.6/26/09), 16 So.3d 1104, 1116. Furthermore, the assessment of quantum, or the appropriate amount of damages, by a trial judge or jury is a determination of fact that is entitled to *1128 great deference on review. Wainwright v. Fontenot, 000492, p. 6 (La.10/17/00), 774 So.2d 70, 74. Because the discretion vested in the trier of fact is great, and even vast, an appellate court should rarely disturb an award on review. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).

Past and Future Medicals

Both DHH and Mr. Travis argue on appeal that the jury’s award of $350,000.00 for Mr. Travis’s past medical expenses was erroneous. Prior to trial, DHH and Mr. Travis stipulated that the total amount of Mr. Travis’s medical bills was $684,686.63; however, DHH did not stipulate causation. Under Louisiana law, a tort victim may recover past (from injury to trial) and future (post-trial) medical expenses caused by tortious conduct. The victim must, however, establish that he incurred past medical expenses in good faith as a result of his injury and future medical expenses will more |nprobably than not be incurred. Menard v. Lafayette Ins. Co., 09-1869 (La.3/16/10), 31 So.3d 996, 1006.
In order to recover, a plaintiff must prove, by a preponderance of the evidence, both the existence of the injuries and a causal connection between the injuries and the accident. See Yohn v. Brandon, 01-1896, p. 6 (La.App. 1 Cir. 9/27/02), 835 So.2d 580, 584, writ denied, 02-2592 (La.12/13/02), 831 So.2d 989. The test to determine if that burden has been met is whether the plaintiff proved through medical testimony that it is more probable than not that the injuries were caused by the accident. Id. Generally, the effect and weight to be given medical expert testimony is within the broad discretion of the trier of fact. Yohn, 01-1896, p. 7, 835 So.2d at 584. The law is well settled that where the testimony of expert witnesses differ, the trier of fact has great, even vast, discretion in determining the credibility of the evidence, and a finding in this regard will not be overturned unless it is clearly wrong. Cotton v. State Farm Mutual Automobile Insurance Company, 10-1609, pp. 7-8 (La.App. 1 Cir. 5/6/11), 65 So.3d 213, 220, writ denied, 11-1084 (La.9/2/11), 68 So.3d 522.
Mr. Travis argues on appeal that the jury did not have the authority to award less than the stipulated amount of $684,686.63 in past medical expenses; however, this argument is without merit. DHH did not admit causation for all medical expenses; therefore, if there is a reasonable evidentiary basis upon which the jury could have found portions of the medical bills were unrelated to the initial injuring event, then an award for less than the total stipulated amount may be upheld. See White v. Longanecker, 93-1122, p. 9 (La.App. 1 Cir. 5/23/94), 637 So.2d 1213, 1218.
112DHH argues that the jury’s award of $350,000.00 for past medical expenses was erroneous. DHH urges that the jury’s award of less than the full amount of medical expenses indicates the jury did not believe that Mr. Travis’s second hospitalization was caused by his consumption of vibrio-infected oysters, and therefore the award of medical expenses should be limited to the cost of his initial hospitalization. Accordingly, DHH requests that we reduce the award for past medical expenses to $55,409.26, the cost of Mr. Travis’s initial hospitalization from May 17 through May 30, 2004.
DHH’s argument is incorrect as it asserts the only possible cut off for recovery is the date of Mr. Travis’s initial discharge. If the jury concluded that portions of the treatment received in the second hospital *1129 ization were caused by DHH’s breach, then an award for more than his initial hospitalization expenses would be appropriate. A thorough examination of the record supports this conclusion.
During Mr. Travis’s second hospitalization, he received treatment and surgeries for damaged skin and tissue in his lower extremities, problems present at his initial discharge. Both Mr. Travis’s treating physician and DHH’s medical expert agreed that Mr. Travis initially went into septic shock from vibrio vulnificus bacteria acquired by consuming raw oysters. However, when Mr. Travis was initially discharged on May BO, 2004, his MELD scores (a numerical representation of liver status based on three medical tests including kidney function), had returned to baseline levels present before his consumption of the raw oysters. DHH’s medical expert contended that no further treatment for the initial bacterial infection was recommended at that point (with the exception of continued antibiotics for ongoing inflammation in his legs) and testified that when Mr. Travis returned to the hospital on June 7, 2004, tests showed no evidence of the 11Svibrio vulnificus bacteria in his liver, but instead identified a different organism, Candida albicans, in his abdomen and urine. DHH’s medical expert charged it was this organism that caused an unrelated sepsis, which ultimately necessitated Mr. Travis’s organ transplants, and testified that Mr. Travis could have developed this Candida infection without a previous vibrio insult due to his underlying liver condition.
Nonetheless, it was uneontroverted that the inflammation of the skin and tissue in Mr. Travis’s lower extremities was present when he was initially discharged, that the vibrio bacteria commonly lodges itself in the skin, and that resulting inflammation could cause damage to the skin and surrounding tissues, requiring corrective surgical procedures. DHH’s expert agreed that the inflammation in Mr. Travis’s legs and surrounding tissue from the vibrio infection was ongoing when he was initially discharged. Furthermore, medical records stated that his need for skin grafts and his leg injuries were caused by the vibrio infection. Mr. Travis’s treating physician also noted this distinction between his organ functions and legs, testifying that upon initial discharge, Mr. Travis appeared to be recovering well, except for his ongoing “leg wounds.” Thus, the verdict and evidence reasonably suggest and support that the jury concluded that some, though not all, of Mr. Travis’s health complications were caused by the ingestion of the vibrio vulnificus.
When medical expenses have been incurred for the treatment of multiple injuries or conditions, and a jury finds that some, though not all, of those injuries or conditions were caused by the.event in question, the jury’s great discretion permits it to award something less than the full amount of the medical expenses. See, Kaiser v. Hardin, 06-2092 (La.4/11/07), 953 So.2d 802, 810-811; Fontana v. Newman, 11-1793 (La.App. 1 Cir. 5/22/12) (unpublished), 2012 WL 1856969, Shoats v. McKenzie, 11-0573 (La.App. 1 Cir. 11/9/11) (unpublished), 2011 WL 5408737, writ denied, 12-0262 (La.3/30/12), 85 So.3d 123.
When reviewing a jury’s factual conclusions with regard to special damages, including the jury’s decision to award an amount less than the medical expenses claimed by a plaintiff, an appellate court must satisfy a two-step process based on the record as a whole: first, there must be no reasonable factual basis for the fact finder’s conclusions, and second, the finding must be clearly wrong. Kaiser v. Hardin, 2006-2092 (La.4/11/07), 953 So.2d 802,
*1130 810 (per curiam). The jury awarded Mr. Travis the sum of $350,000;00 in past medical expenses. The jury was confronted with conflicting expert testimony and. a stipulation of the medical expenses incurred during multiple hospitalizations for treatment of multiple conditions. Upon the evidence presented, an item-by-item allocation of medical expenses was not, and is not, possible, nor would justice be served by awarding all of the expenses to Mr. Travis or refusing to award any of the expenses to Mr. Travis.. Under the circumstances, the jury’s award of a portion of the medical expenses was not an abuse of its discretion, and illustrates the jury’s discretion to arrive at a verdict that is just. Applying the two-step process enumerated in Kaiser, id., and considering the record in its entirety, we are unable to say the jury abused its discretion in rendering awards for past and future medical expenses.

Past & Future Lost Wages

DHH contends on appeal that the jury’s award of $140,000,00 for past lost wages was in error. DHH argues this amount should be reduced to zero because prior to becoming ill from consuming the oysters at Spitale’s, the plaintiff had reduced his workload due to his underlying NASH and had not h ¿worked at all in his occupation as a boilermaker for one month. Alternatively, DHH argues that if an award for past lost wages is appropriate, then that award should be reduced by the amount Mr. Travis could have earned if he had begun working as a teacher in January 2009. DHH contends that the maximum award for Mr. Travis’s past lost wages, taking, into account his income potential as a teacher, should be $73,832.42. DHH correctly notes that it is the plaintiffs burden to prove past lost wages, and that such an award is susceptible of mathematical calculation from the proof offered at trial. Daigle v. United States Fidelity and Guaranty Insurance, 94-0304, p. 15 (La.App. 1 Cir. 05/05/95), 655 So.2d 431, 441. Nonetheless, in light of the evidence submitted regarding Mr. Travis’s injuries and ability to work, it cannot be said that the jury’s award for past lost wages was in error or that the amount awarded was clearly erroneous.
There was conflicting testimony at trial whether Mr. Travis’s girlfriend ever stated that he had been working “less and less” due to his underlying liver disease prior to the vibrio infection; nevertheless, it was established at trial that work as a boilermaker was varied and seasonal. Therefore, in light of the conflicting testimony and logical alternative basis for Mr. Travis’s month of unemployment, it cannot be said that the jury clearly erred in concluding Mr. Travis would have continued employment as a boilermaker but for DHH’s breach. It was also uncontested that after the vibrio infection, Mr. Travis could no longer continue working as a boilermaker due to his orthopedic limitations. DHH did present evidence that a Functional Capacity Examination conducted by an occupational therapist in late January 2008 cleared Mr. Travis for “light physical demand” work despite his orthopedic limitations. Further, a vocational rehabilitation counselor cleared Mr. Travis for employment as a teacher (Mr. Travis | ^required two classes to become a certified teacher), and testified that Mr. Travis could have been employed as such had - he ever attempted to do so. DHH’s economist testified that Mr. Travis could have begun working as a teacher in January of 2009, and would have earned $41,640.00 annually in that capacity. DHH argues on appeal that this figure must be subtracted from the total award for past lost wages.
It is clear from the lack of a jury award for future lost wages that the jury conclud *? ed that Mr. Travis could have begun working at some point before trial and with an earning potential that was at least as high as before the vibrio insult. The jury was presented with evidence that placed Mr. Travis’s annual wages before this injuring event between $25,775.00 and $42,307.00. Accepting the earliest argued date of Mr. Travis’s potential employment, January 1, 2009, Mr. Travis would have suffered lost wages for 4.63 years from the initial date of injury (May 15, 2004 — January 1, 2009). Considering a wage-loss period of 4.63 years, the jury’s past lost wages award of $140,000.00 would amount to an award of $30,237.58 per year, a figure well within the range of potential income for Mr. Travis. Thus, the jury’s award for Mr. Travis’s past lost wages is not erroneous.
Likewise, Mr. Travis argues on appeal that the lack of a jury award for future lost wages was incongruous with the testimony and the jury’s finding of a permanent injury. This argument is also without merit. Although the loss of future wages encompasses the “loss of a plaintiffs earning potential — the loss or reduction of a person’s capability to do that for which he is equipped by nature, training and experience, and for which he may receive recompense,” Smith v. Porche Bros. Lumber and Supply, Inc., 491 So.2d 412, 415 (La.App. 1 Cir.1986), it was established at trial that Mr. Travis had a college degree in education and could have found 117employment as a teacher, in spite of his orthopedic limitations. DHH’s economist placed Mr. Travis’s future earning potential as a teacher at $41,640.00 annually. As previously noted, the jury could have reasonably determined that Mr. Travis’s earning potential as a teacher was equal to or higher than the annual salary Mr. Travis earned prior to his injury as a boilermaker, making an award for future lost wages inappropriate. This determination by the trier of fact cannot be said to be clearly erroneous.

General Damages

Mr. Travis’s next assignment of error is that the lack of jury awards for loss of enjoyment of life, future physical pain and suffering, or future mental anguish is incongruous with the finding of permanent injury in light of the circumstances, and was thus an abuse of the jury’s discretion. Unlike special damages, these challenged awards are general damages, which cannot be determined with pecuniary exactitude. See Duncan v. Kansas City Southern Railway Co., 00-0066, p. 13 (La.10/30/00), 773 So.2d 670, 682; see also, Youn, 623 So.2d at 1261. Mindful of the deferential standard of review this court is obliged to follow, it cannot be said that the jury’s general damage award was an abuse of its discretion.
When assessing damages, “much discretion must be left to the judge or jury.” La. C.C. art. 2324.1. Due to the innate inexactitude of general damages in particular, the role of the appellate court in reviewing these awards is limited. The court should not decide what it believes is an appropriate award, but rather should review the discretion of the trier of fact in accordance with the circumstances of the case. Youn, 623 So.2d at 1260 (La.1993). The discretion vested in the trier of fact to set general damage amounts is “great, and even vast,” so an appellate court should rarely change such awards. Id. at 1261. Only if an award is beyond what any reasonable | ^person could have assessed for the injury suffered in light of the evidence may an appellate court disturb a jury award for general damages. Id. In addition, only after determining that the fact finder abused its great discretion may an appellate court consider awards in similar cases, and even then may only do so for *1132 the purpose of determining the highest or lowest figures within the fact finder’s discretion. Howard v. Union Carbide Corp., 09-2750, pp. 5-6, 50 So.3d 1251, 1256 (La.10/19/10) (citing Coco v. Winston Indus. Inc., 341 So.2d 332 (La.1976)).
Notably, a cursory examination of personal injury cases reveals that general damage itemization varies. Courts may combine or separate physical and mental pain and suffering, combine or separate past and future pain and suffering, reflect permanent injuries as permanent disability or impairment or disfigurement, or reflect mental anguish as mental pain and suffering or mental suffering and emotional distress. See e.g., McGee v. AC And S, Inc. 05-1036 (La.07/10/06), 933 So.2d 770; Matos v. Clarendon Nat. Ins. Co., 00-2814 (La.App. 1 Cir. 02/15/02), 808 So.2d 841; Rickerson v. Fireman’s Fund Ins. Co., 543 So.2d 519 (La.App. 1 Cir.1989). In reviewing an attack on a general damage award, the entire damage award is reviewed for an abuse of discretion, and if the total general damage award is not abusively low, it may not be disturbed. Graham v. Offshore Specialty Fabricators, Inc., 09-0117 (La.App. 1 Cir. 1/8/10), 37 So.3d 1002, 101; Smith v. Goetzman, 97-0968 (La.App. 1 Cir. 9/25/98), 720 So.2d 39, 48.
At trial, the judge correctly and fully informed the jury of their broad discretion in awards for general damages and authorized them to consider past and future pain and suffering, inconvenience, mental distress, and loss of enjoyment of life. On appeal, Mr. Travis challenges the lack of a jury award for loss of enjoyment of life. Louisiana courts have held that La. C.C. art. 2315 allows a victim to be compensated for damages caused by the delictual act of another, including damages for one’s loss of enjoyment of life. McGee, 05-1036 at p. 4, 933 So.2d at 774; In re Medical Review Panel on Behalf of Laurent, 94-1661, p. 13 (La.App. 1 Cir. 06/23/95), 657 So.2d 713, 722.
Loss of enjoyment of life refers to the detrimental alterations of a person’s life or lifestyle or a person’s inability to participate in the activities or pleasures of life he enjoyed prior to the injury. McGee, 05-1036 at p. 5, 933 So.2d at 775 (La.07/10/06). The Louisiana Supreme Court has further explained that “whether or not a plaintiff experiences a detrimental lifestyle change depends on both the nature and severity of the injury and the lifestyle of the plaintiff prior to the injury.” McGee, 05-1036 at p. 5, 933 So.2d at 775. Only if detrimental changes in a victim’s lifestyle (comparative to before the injuring event) would otherwise go uncompensated by other general damage awards is a separate award for loss of enjoyment of life warranted. See Id. 05-1036 at pp. 6-7, 933 So.2d at 775-76.
Mr. Travis cites Fontana v. Newman, 11-1793 (La.App. 1 Cir. 05/22/2012), 2012 WL 1856969, in support of his argument that the lack of a jury award for loss of enjoyment of life is an abuse of discretion in light of an award for permanent injuries when testimony indicates a victim suffers from ongoing problems. However, his reliance on Fontana is inappropriate, as the cases are factually distinguishable. In the instant case, the jury could have reasonably concluded that Mr. Travis’s leg injuries and the subsequent long term care for those leg injuries were caused by DHH’s breach, but that his organ transplants and related care were not. With respect to the limitations caused by his leg injuries, Mr. Travis testified that the problems he suffered with his legs were ongoing, that he suffered continued swelling |2nin his legs, and that to relieve his symptoms he elevated his legs when given the opportunity. Additionally, it was uncontroverted that Mr. Travis could no longer work as a *? boilermaker due to his leg injuries and the physical requirements of this career. Finally, Mr. Travis’s treating physician testified that he could never fully recover from the leg injuries.
Testimony was also presented which indicated Mr. Travis was becoming progressively more fatigued prior to the vibrio insult, and medical testimony confirmed that NASH could affect a person’s stamina and abilities adversely through such fatigue. Further, in spite of his leg injuries and resulting limitations, Mr. Travis has continued to coach football, attend baseball games, and is even able to go deer hunting, although he can no longer use climbing stands. Although he was a college athlete years before the vibrio insult, and despite testifying that he was a sporadic jogger before the incident, the jury could have reasonably concluded in light of his questioned lifestyle before the injury, his ability after the injury to continue doing many of the activities he previously enjoyed, and even his clearance for “light exertional work,” that Mr. Travis did not suffer the sort of detrimental lifestyle change which could not be fairly compensated via another compensable identity of general damages.
Mr. Travis further argues that the jury abused its discretion by failing to award him any amount for future pain and suffering or future mental anguish. Mr. Travis was awarded $60,000.00 for past physical pain and suffering and $35,000.00 for past mental anguish, seemingly as compensation for Mr. Travis’s severe initial septic shock, resultant blistering in his legs, skin graft surgeries, hospitalization, requisite wound care, and other leg problems. The jury’s decision not to award Mr. Travis any damages for future physical pain and suffering or mental anguish is not an |21 abuse of discretion in consideration with the other awards and apparent findings of the jury.
In Louisiana, physical and mental pain and suffering and mental anguish are two compensable identities of general damages that refer to the “pain, discomfort, inconvenience, anguish, and emotional trauma that accompanies an injury.” McGee, 05-1036 at p. 5, 933 So.2d at 775. However, in this case, the jury could have reasonably concluded that Mr. Travis’s organ transplants were unrelated to DHH’s breach. Therefore, the unchallenged testimony showing Mr. Travis required and would require future ongoing monitoring and medical care for his organs, including blood work, laboratory evaluations, and clinic follow-ups were not grounds for an award for future discomfort or inconvenience. Similarly, although Mr. Travis may suffer with continued difficulties resulting from his transplant medicines, diarrhea, and upset stomach, the jury could have reasonably found these problems unrelated to DHH’s breach and thus rightly refused compensation for same.
Despite Mr. Travis’s testimony that he continued to have pain and swelling in his legs, the jury could have reasonably concluded that his unquestionably severe leg injuries and resulting treatments merited compensation via an award for pain and suffering while, going forward, his permanent injuries and limitations could be fairly compensated via an appropriate award for permanent injuries. This finding was well supported by various testimony, including that of Mr. Travis’s girlfriend, treating physician, and friend, and was not an abuse of the jury’s broad discretion.
The evidence indicated that Mr. Travis suffered limitations including orthopedic-related leg weakness, and an inability to climb, jump, jog, or walk as well as before. When considering these circumstances, the jury |22Could have reasonably concluded *1134 these limitations were best qualified as “permanent injuries,” and thus prospectively compensated Mr. Travis in the amount of $100,000.00. In total, Mr. Travis received $195,000.00 in general damages. We find these figures are not so disproportionate as to require revision.

Improper Reduction of Damage Awards

Finally, Mr. Travis alleges that the jury erred in improperly reducing the damage awards by Mr. Travis’s comparative fault, resulting in a “double reduction.” Mr. Travis offers no explanation for his assertion that the jury reduced the damage awards by Mr. Travis’s percentage of fault; the amounts of the damage awards are round numbers and do not appear to have been reduced by 27%. Mr. Travis’s argument on appeal Is simply that the jury instruction given on comparative fault, as well as the special verdict form, confused the jury into reducing the amount of Mr. Travis’s damage awards by his percentage of fault.
An objection to the court’s failure to give a particular jury charge or interrogatory must be made before the jury retires to deliberate. La. C.C.P. arts. 1793 and 1812. Failure to object timely constitutes a waiver of that objection, and an appellant may not raise the issue for the first time on appeal. Wiggins v. Exxon Corp., 590 So.2d 1209, 1210 (La.App. 1 Cir.1991). Our review of the record, including the transcript of the jury charge conference where the instruction and interrogatory were discussed in detail, shows plaintiff made no objection to the now complained-of jury instructions or interrogatories. Thus, the issue may not be raised on appeal. This assignment of error is without merit.
| ^CONCLUSION
For the reasons set forth herein, the trial court judgment is affirmed. Costs of this appeal, in the amount of $14,899.50, are to be borne equally by the parties.
AFFIRMED.
GUIDRY, J., concurs.

. Vibrio vulnificus is a marine bacteria that is not dangerous to people in good health but can cause life-threatening illness in people with certain health conditions.

. At the close of the evidence, or at such earlier time as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests. La. C.C.P. art. 1793(A).