THERIOT, J.
|2In this child custody case, the mother appeals a judgment in which the trial court granted sole custody of the parties’ minor children to the father. For the following reasons, we affirm the judgment of the trial court.

FACTS & PROCEDURAL HISTORY

This matter involves a protracted and contentious custody dispute between Karl Kirsch and Kristin Kirsch [together, “the parties”]. The parties were married on January 12, 2001. Two children were born *419 of the marriage: MK[1], born August 16, 2001, and SK, born December 20, 2003. The parties separated and ceased- living together in September 2011.[2]
Kristin filed a complaint with the Department of Children and Family Services [“DCFS”] on September, 8, 2011, alleging that Karl had been, physically abusive to her and physically and sexually abusive to the children. DCFS closed the case, finding it was inconclusive for sexual .abuse, invalid for physical abuse, and valid for lack of supervision on the part of both parents.
On September 14, 2011, Kristin filed a petition for protection from abuse, alleging that Karl had physically abused both her and the children. Following an October 19, 2011 hearing, the parties reached a consent agreement that enacted- an 18-month protective order against Karl in favor of Kristin, but not in favor of the children. The consent agreement further granted Kristin temporary custody and provided for Karl to have supervised visitation until he completed an anger management course and a parenting course,
laKarl filed a Petition for Divorce pursuant to La. C.C. art. 102 on October 12, 2011, requesting joint custody of the children and to be the designated domiciliary parent.
On: November 28,-2011, and December 8, 2011, DCFS received reports of suspected child abuse or neglect by Karl against the children and opened investigations into the reports. There was some dispute as to who filed the November 28, 2011 report, but it appears that both reports were filed by Kristin. The November 28, 2011 complaint was closed with notes reading:
Sexual abuse disclosures were never consistent and the boys appeared to be coached... Mrs. Kirsch’s family members do not believe the abuse occurred ... Both boys are disclosing sexual abuse by their father. The disclosures are not consistent... The boys say they are afraid of their father but do not act fearful in front of him.
On December 7, 2011, Kristin filed an Answer and Recoriventional Demand in forma pauperis, seéking sole custody with supervised visitation pursuant to the Post-Separation Family Violence Relief Act, La. R.S. 9:361 et seq. [“the Act”], spousal support, and child support. Kristin alleged that Karl was not entitled to joint custody due to a history of family violence against Kristin and the children.[3]
The initial Hearing Officer Conference [“HOC”] was held on December 13, 2011. Récommendations were issued awarding joint custody to both parents, with Kristin as the designated domiciliary parent.[4] A *420 new ^visitation schedule was agreed upon, and Karl’s visitation was to be supervised by his mother. Regarding Kristin’s request for an injunction pursuant to the Act, the HOC Report/Recommendations provided that the request “must be tried.”
On January 6, 2012, Karl filed an Answer to Kristin’s Reconventional Demand, in which he sought sole custody of the two minor children because Kristin had made false allegations of neglect and abuse against him, and alleging that Kristin should only be awarded supervised visitation with the children.
The second HOC was held on February 13, 2012, and was memorialized in a February 15, 2012 Consent Judgment that awarded temporary joint custody, lifted the supervision requirements on Karl’s visitation, and named Kristin the domiciliary parent. Regarding Kristin’s request for an injunction pursuant to the Act, the HOC Report/Recommendations provided that the request “shall be addressed at the follow-up” HOC.
On February 29, 2012, DCFS notified Karl by letter that the DCFS investigations into the November 28, 2011, and December 8, 2011, complaints had been completed, and there was not sufficient information to support a finding of abuse or neglect.[5]
On April 20, 2012, Karl subpoenaed the records of the Slidell Police Department [“SPD”]. He also filed a motion to unseal the DCFS records and compel the deposition of Detective Brian Brown, alleging that Kristin had repeatedly falsely accused Karl of physical and sexual abuse of the children |sin an attempt to improperly influence the custody and related financial determinations. He further alleged that the requested information was critical to his claim for sole custody. An HOC report dated June 27, 2012, summarizing the June 22, 2012 HOC, reflected Karl’s allegations that Kristin had falsely accused him of sexual abuse of the children. It was Kristin’s testimony that the children had made alarming statements, which she reported to the appropriate authorities. Kristin’s reports of sexual abuse had been made prior to the February 13, 2012 HOC, and all resulting investigations had been closed by the time of the June 22, 2012 HOC; thus, the June 27, 2012 HOC Report recommended joint custody, with Kristin as the domiciliary parent, and denied Kristin’s request for an injunction pursuant to the Posi^Separation and Family Violence Relief Act.
Karl filed an objection to the June 27, 2012 HOC report recommendations with the trial court, specifically objecting to the award of joint custody, the designation of domiciliary parent, and the visitation schedule. Karl filed a Pre-Trial Memorandum alleging that since the fall of 2011, Kristin had been filing and reporting false allegations of child abuse, both sexual and physical, against him for the sole purpose of influencing the court’s determination of pending custody matters. Karl maintained that Kristin submitted false reports to the City of Slidell, DCFS, and various hospitals and medical facilities in Mississippi and Louisiana, subjecting both children to invasive, humiliating, and potentially damaging physical examinations and forensic evaluations. Karl further alleged that Kristin had coached the children into falsely accusing him of sexual abuse. Karl *421 alleged that Kristin’s rights to custody, unsupervised visitation, child support and spousal support should be terminated as a result.
| ijFollowing a July 24, 2012 hearing before the trial court, an Interim Consent Judgment upheld the previous joint custody arrangement with Kristin as the domiciliary parent. The judgment also ordered both parties to submit to a full mental health examination by Dr. Alan James Klein, who would be granted access to all court records. A hearing to establish temporary custody was set, but was twice continued because Dr. Klein was unable to complete his evaluations and issue reports before the hearing date.
The matter went to trial on August 5 and 7, 2013. The trial court rendered its decision in open court on August 7, 2013, and gave extensive oral reasons for judgment. On August 8, 2013, the trial court signed a judgment consistent with its August 7 ruling, granting Karl sole custody of the children and further providing that upon presentation by the parties, the court would execute the judgment addressing the other issues upon which it had ruled. On September 5, 2013, Kristin filed a Motion and Order for Devolutive Appeal from the final judgment rendered in the action.
On September 9, 2013, the trial court signed a second judgment reiterating that Karl had been awarded sole custody, and, among other specific orders, provided that Kristin would have only supervised visitation on alternating weekends, and that neither party should publicly disclose any facts or details of the proceedings nor discuss them with the children.

STANDARD OF REVIEW

The court shall award custody of a child in accordance with the best interest of the child. La. C.C. art. 131. In determining the child’s best interest, the court shall consider all the factors that are relevant to that specific case. La. C.C. art. 134. The trial court’s decision in child custody matters is entitled to great weight and it will not be overturned absent a clear [^showing of an abuse of discretion. Bergeron v. Bergeron, 492 So.2d 1193, 1196 (La.1986).

DISCUSSION

Assignment of Error No. 1

In her first assignment of error, Kristin argues that the trial court erred in awarding sole custody to Karl and permitting only supervised visitation by Kristin because Karl failed to put forth evidence that such was in the best interests of the children, and because Karl failed to prove that Kristin coached the children to make false allegations against him.
Kristin also challenges the qualification of Investigator Brian Brown of the Louisiana Department of Justice, who testified regarding his belief that Kristin coached the children, as an expert witness in “criminal investigation of the sexual abuse of children.” Brown was the SPD Detective who investigated the allegations of sexual abuse against Karl. However, as Kristin failed to object to the qualification of Brown as an expert at the trial on this matter, this issue may not be raised on appeal.[6]
*422 Generally, the court shall award custody to the parents jointly; however, if custody to one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent. La. C.C. art. 132. Every child custody case is to be viewed on its own particular set of facts and therelationships involved, with the paramount goal of reaching a decision which is in the best interest of the 1 schild. The trial court is vested with broad discretion in deciding child custody cases. Because of the trial court’s better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate court functions, great deference is accorded to the decision of the trial court. Appellate courts must be vigilant to not retry cases. A trial court’s determination regarding child custody will not be disturbed absent a clear abuse of discretion. Martello v. Martello, 2006-0594 (La.App. 1st Cir.3/23/07), 960 So.2d 186, 191-92. This court may not set aside a trial court’s finding of fact absence manifest error or unless it is clearly wrong; thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Furthermore, when factual findings are based on the credibility of witnesses, the fact finder’s decision to credit a witness’s testimony must be given “great' deference” by the appellate court. Id.
Considering the particular facts and the relationships involved in this case, we must determine if the trial court abused its discretion in finding by clear and convincing evidence that awarding sole custody of the children to-Karl is in the childrens’ best interest. Further, we must determine if the trial court’s evaluations of credibility are reasonable.
The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731, 738; Tanner v. Wallace, 2014-1728 (La.App. 1st Cir.4/24/15) (unpublished). In determining the best interest of the child,.La. C.C. art. 134 enumerates twelve factors to be considered by the trial court, which include:
|n(l) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment. ■
(5) The permanence, as- a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of'each party/insofar as it affects the welfare of the child.'
(7) The mental and physical health of each party.
(8) The home, school, and community history, of the child.
*423 (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express, a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship, between the child and the other party. -
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The list of factors set forth in Article 134 is non-exclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. La. C.C. art. 134, comment (b), Revision Comments — 1993. We here summarize both the evidence contained in the récord before us and the trial court’s analysis and conclusion based on the La. C.C. art. 134 factors for determining the best interest of the children, as follows:
Regarding the first La. C.C. art. 134 factor, the trial court concluded that the love, affection, and other emotional ties between eách party and the children are equal bétween the parties. This is supported by the report of Dr. Klein, who conducted full mental health examinations of both parties pursuant to the Interim Consent Judgment and evaluated both children. In his report, Dr. Klein wrote that the children appeared to be equally bonded to both parents.
| ^Regarding the second La. C.C. art. 134 factor, the trial court concluded without discussion that it was her belief that Karl has the greater capacity and disposition to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
Regarding the third La. C.C. art. 134 factor, the trial court concluded that Karl has the greater capacity and disposition to provide the children with food, clothing, medical care, and. other material needs. Karl has stable employment and demonstrated better judgment concerning financial matters; whereas Nurse Ann Troy, a nurse at Children’s Hospital in New Orleans, who had examined MK after Kristin brought him to the ER alleging sexual abuse, reported that Kristin told her during a hospital visit that she had no money for food and gas and convinced Nurse Troy to give Kristen assistance. In addition, as'found by the trial court, Kristin appears to be in denial about the children’s medical needs and lacks the capacity to handle the children’s medical needs, as demonstrated by her failure to provide the children with enough medication to last the duration of their visits with Karl and her refusal to accept doctor’s recommendations of miedications for the children. In light of the children’s severe mental health issues, including previous threats and actions of physical violence against their parents and sexually acting out against other children, a thorbugh understanding of and ability to address the children’s medical needs is vital, and Kristin’s history demonstrates her lack of capacity to provide the children with such.
Regarding the fourth La. C.C. art. 134 factor — the length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment — the trial court concluded that Karl can provide the children with the most stable and adequate home environment. This conclusion was based on evidence that the living In conditions with Kristin have at times been poor, while Karl currently- has a stable, adequate residence with his mother.
■ Regarding the fifth La. C.C. art. 134 factor — the permaneiice, as a family unit, of the existing or proposed custodial home or homes — the trial court found it signifi *424 cant that Kristin relies almost entirely on spousal support, which is likely to result in an’inability to maintain her current residence at some point in time.
The sixth and seventh La. C.C. art. 134 factors, which consider the moral fitness of each party as it affects the welfare of the children, and the mental and physical health of the parties, respectively, involve closely interrelated issues of extreme significance.
With respect to Karl, Dr. Klein’s report and testimony indicated that Karl tends to be suspicious and appears easily irritated, and regarding Kristin’s allegations that Karl physically abused her, Dr. Klein stated that there was “reasonable concern that this may be a possibility.” Dr. Klein described Karl as “always logical, coherent and orderly in his thinking” and reported that there was no indication that Karl has mood problems or instability in emotional functioning. Karl had no criminal history. The trial court ultimately found that Karl had no psychological problems of any significance.
In stark contrast, the trial court found that Kristin “presents a danger to these children at this point in time on many levels.” The evidence and the trial testimony together demonstrate significant issues regarding both Kristin’s moral fitness, her judgment, her credibility, and her mental health. Further, Dr. Klein testified that Kristin has a major depressive disorder and anxiety disorder; he also testified that she presented with a “malignant psychological picture” and the “data points toward severe psychological | ^disturbance.” Dr. Klein’s report to the trial court indicated that Kristen is naive, highly anxious, and has notable character issues, including being resentful, argumentative, suspicious, paranoid, and “has a long history of severe social maladjustment with a poor work history.”
Kristin had on at least one occasion permitted individuals to stay in the home with the children, although she did not know the individuals well enough to tell Dr. Klein their last names. In addition, Kristin claimed to Dr. Klein that she had-been diagnosed with cancer in 2009, but failed to follow up on the diagnosis or seek treatment. She also told Dr. Klein that she had been admitted to both Harvard and Yale after high school, though when questioned, she did not know where either school was located, and Dr. Klein testified that such an achievement would be very surprising given her psychological profile. Kristin has been arrested for breaking and entering and assault and battery, while one of the .children was with her. No explanation or denial of this event was provided.
Investigator Brown’s testimony, which overlapped with the contents of the DCFS records, fleshed out the history surrounding the sexual abuse allegations and provided further support for the conclusion that the children had been coached.[7]
*425 |1sBrown testified that on October 19, 2011, the SPD received a call from Kelsey Bourgeois at DCFS relating to Kristin’s allegation of sexual battery against Karl. One of Brown’s colleagues met with Kristin the next day, and Kristin reported that MK had written “Dad hurt my butt” on the wall with his feces when the parties lived in California years earlier; that both children had commented that Karl had been engaged in “wee wee touching” -with the boys; and that Kristin had personally seen MK put his mouth on SK’s genitals and that Karl had made the children do this to him in the past.
On October 26, -2011, Brown arranged for a forensic interview of both children with representatives of DCFS at Hope House, which he observed on closed circuit television. SK stated that he couldn’t remember what he was supposed to say, but what he told the other person was all true. Kristin calmly denied having coached the children when Brown confronted her. The DCFS employees both agreed with Brown that the children had been coached. On this issue, the trial court noted its belief that this matter was the only occasion it had ever seen DCFS “actually say that they believe the mother had coached the children.”
Following the Hope House interviews, Karl passed a polygraph test. However, Kristin could not complete her polygraph test because she was “very upset, hysterical.” After the attempted polygraph test, Kristin told Brown that she would consent to Karl having joint custody, which he testified was a “red flag,” because “[s]ome-one whose child is being molested by the parent would not agree to let them have any custody, at least in my experience.”
1140n October 28,'2011, Brown spoke with Nurse Troy, 'a nurse at Children’s Hospital in New Orleans, who had examined MK after Kristin brought him to the ER alleging sexual abuse. Troy found no evidence to corroborate Kristin’s allegations and also felt that the story had been coached or rehearsed. Further, Troy felt tricked, as she had given Kristin money for food and gas. The investigation of these charges was closed- on November 4, 2011, finding that Kristin lacked credibility and that there were numerous inconsistencies in her stories, as well as indications that the - children had been coached and there was no physical evidence of abuse.
Brown testified that at one of the monthly meetings held to review investigations of alleged sexual abuse attended by individuals representing the St. Tammany Parish. Sheriffs Office, the Covington Police Department,, the DCFS and the District . Attorney’s Office, everyone present felt that MK and SK had been coached to assert false allegations of sexual abuse against Karl. In addition, DCFS received a phone call from Kristin’s sister, who stated that she believed Kristin had fabricated the allegations.
Brown investigated other abuse allegations filed by Kristin. Shortly after closing, the first investigation, Brown received a call from DCFS reporting that Kristin had accused Karl of placing marshmallows in the children’s anuses and taught them to (jo it to each other. These charges were determined to be false.
In early 2012, the Jefferson Parish Sheriffs Office [“JPSO”] contacted Brown re *426 garding an allegation submitted by Kristin that she had found blood in MK’s underwear and that Karl had raped him. The substance was determined to be feces, and JPSO closed the investigation.
11KBrown testified that he considered arresting Kristin for filing false police reports, but after discussions with his supervisors, decided against it due to her fragile mental state.
Natalie Elyea, Kristin’s maid of honor at her wedding to Karl, testified by deposition that Kristin has a propensity to falsely accuse people of abuse. Specifically, Elyea testified that Kristin accused’ her high school swim coach of sexually abusing her; accused her mother of physical abuse; and' accused her sister of sexually abusing her.
Regarding an incident that occurred in the New Orleans French Quarter, one of several instances in which Kristin accused Karl of physical abuse, Elyea’s testimony was consistent with Karl’s and indicated that contrary to Kristin’s allegations, Kristin was abusive to Karl and not the other way around. Ruby Kirsch, Karl’s mother, also testified that she had seen Kristin be physically violent towards Karl.
The trial court concluded that Kristin is dishonest and a danger to the children and “has a long and extensive history of not telling the truth to the children, to the DCFS, to medical personnel, to authorities, to the Codrt.” The trial court further stated:
It was difficult, in' listening to what she had to say and looking through all the testimony and the documentary evidence, it is difficult to understand is she delusional or is this malicious and intentional and directed at. destroying this man’s relationship with his children. And I am not so sure I even have to come to that .conclusion. But I can tell you that if I do have to come to that conclusion, I do believe she coached her children.
She has coached the most vulnerable of children willingly, maliciously, arbitrarily, in an effort to gain an advantage in this case, in an effort to destroy the relationship with their father, in an effort to alienate them from their father. And the most vicious allegations that she could make, the most bizarre allegations that she could make were told to these children and they were coached to tell authorities, that’s reprehensible.
11fiThis is consistent with Dr. Klein’s report, in which he stated that “[i]t was not at all clear what had transpired other than there was either coaching and/or the children had been interviewed numerous times and have been contaminated and when they see a therapist they are expected to talk about the abuse,” and his testimony, that “in reviewing all of the records and the experts who opined regarding the sexual molestation, combined with some 20-something years as director of a sexual abuse treatment program — speaking about myself — I did not see any validity in the allegations.” .
Regarding the eighth La. C.C. art. 134 factor, the trial court concluded that the home, school, and community history of the children supported an award of custody to Karl. In light of the fact1 that the children have moved previously, due to Karl’s military service, it is unlikely that it would be significant for the children to move again. Further, Karl will have family support, whereas Kristin does not and has accused several of her own family members of physically and sexually abusing her.
Regarding the ninth La. C.C. art. 134 factor — the reasonable preference of the *427 children — the trial- court concluded that there was no credible evidence presented.[8]
Regarding the tenth La. C.C. art. 134 factor, the trial court concluded that the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the children and the other party was a huge factor in this case. In light of “the level of parental alienation that has been exhibited by the mother toward the father,” the trial court found that Kristin has no ability to facilitate and encourage a relationship between 117the children and Karl. In contrast, the trial court, found that Karl has a great ability to facilitate and encourage a relationship, between Kristin and the children, as demonstrated .by his continued willingness to allow her-to be involved -in the childrens’ lives.
Regarding the eleventh La. C.C. art. 134 factor, the trial court concluded that the distance between the respective residences of the parties was negligible.
Regarding the twelfth La. C.C. art. 134 factor of responsibility for the care and rearing of the children previously exercised by each party, the trial court stated that despite the history óf Kristin acting as the primary caregiver, such'was not to be desired any' longer for all of the above reasons.
The Louisiana Supreme Court in C.M.J. v. L.M.C., 2014-1119 (La.10/15/14), 156 So.3d 16, 26, upheld the trial court’s award of sole custody to a father after finding that there, was no credible evidence that the father had ever physically or sexually abused the children, but rather that the mother had fabricated allegations of physical and sexual abuse against the father and manipulated the children into making false allegations against their father. In this piatter, as in C.M.J., the trial court found that there was no .credible evidence that the father had abused the children and that. Kristin falsely.accused Karl of abusing the children and coached the children into supporting the allegations. Kristin argues-that because she never raised sexual abuse allegations in the -custody proceedings, “it is difficult to grasp” how she could have hoped to- obtain an advantage in the proceedings by raising the allegations to DOFS arid law enforcement. However, given the obvious impossibility of Kristin obtaining any advantage by deliberately bringing the trial court’s attention to the DCFS ' and law enforcement | ^investigations in light of the outcome of all of the investigations, this argument is specious.
Having thoroughly reviewed the record and evidence in its entirety, and considering the particular facts and the relationships involved in this case, we find' no manifest error in the trial court’s factual determination that Kristin coached the children into supporting false allegations of sexual abuse by their father. For-this reason and the many others extensively detailed above, we find that the trial' court did not abuse its discretion in finding that Karl has shown by clear -and convincing evidence that awarding sole custody of the children to Karl is in the-children’s best interest. Further, the Louisiana Supreme Court’s recent decision in C.M.J. strongly supports the trial court’s award of sole custody to Karl urider these circumstances. This assignment of error is without merit.

*428
Assignments of Error Nos. 2, 3 and 4

In her second assignment of error, Kristin argues that the trial court erred and abused its discretion in dismissing her claim that she was a victim of domestic violence and entitled to protection under the Act, because it did not apply the protections afforded by the Act at the outset of the proceedings nor determine whether the Act applied to Kristin. Kristin .contends that she was improperly required to participate in HOCs while a protective order was in place and that each HOC resulted in an award of temporary joint custody, which required Kristin to co-parent with Karl. Kristin maintains that the hearing officer process in cases alleging domestic violence improperly circumvents the express provisions of the Act, as the HOCs occur prior to a victim’s opportunity to prove to the court that he or she has been the victim of domestic violence. Kristin further argues that by virtue of the protective 119order that was in place when the HOCs occurred, Karl should have been precluded from obtaining joint custody under the Act.
In her third assignment of error, Kristin maintains that she has been punished for expressing her concerns that her children were being abused to appropriate authorities, because Karl was able to use the conclusions of DCFS and other law enforcement authorities that there was insufficient information to support a charge of abuse and neglect against him as evidence that Kristin was guilty of alienation. Thus, Kristin maintains that the practical effect of the trial court’s ruling has been an unconstitutional suppression or chilling of speech, in violation of. the First Amendment and public policy.
In her fourth assignment of error, Kristin argues that' the trial court’s blanket suppression of her content-based speech constitutes an impermissible restraint of speech and cannot stand under the First Amendment.
The first issue addressed in Karl’s brief is whether this Court has jurisdiction over all of the issues presented in Kristin’s appeal. For the reasons that follow, we find that this Court’s jurisdiction does not include assignments of error numbers 2, 3, and 4.
The trial court signed two judgments in this matter. The first was signed on August 8, 2013, and ordered that Karl was awarded sole custody of the children. The August 8, 2013 judgment also stated that “[u]pon presentation of the parties, the court -mil execute-the Judgment addressing the other issues upon which the court ruled at the hearings of August 5 and 7, 2013.”
On September 5, 2013, Kristin filed her Motion and Order for Devolutive Appeal pro se, which referenced the August 8, 2013 judgment, |2nand stated “[mjover desires to appeal from the final judgment rendered in this action to the Court of Appeal, First Circuit State of Louisiana.”
On September 9, 2013, the second judgment was filed, and was signed by the trial court on September 17, 2013. Notice of Judgment was mailed the same day. This judgment included the provisions that are challenged in Kristin’s remaining assignments of error.
In Voelkel v. State, 95-0147 (La.App. 1st Cir.10/6/95), 671 So.2d 478, 479-80, writ denied, 95-2676 (La.1/12/96), 667 So.2d 523, this Court wrote as follows:
On September 1 the trial court signed a judgment granting the motion of “the State of Louisiana.” A separate judgment was signed on September 30 dismissing WPPJ [Washington Parish Police Jury].
*429 Plaintiffs petition for appeal, filed September 23,1994, stated he was appealing the judgment “rendered on or about August 30, 1994.” The order granting the appeal was signed October 17, 1994. Plaintiff treated the appeal as if it were an appeal of both judgments.
APPEAL OF JUDGMENT DISMISSING WPPJ

Does this court have jurisdiction?

WPPJ contends this court has no jurisdiction to review the judgment dismissing it because no order granting an appeal of the September 30 judgment was obtained by plaintiff. Louisiana Code of Civil Procedure article 2121 provides in pertinent part: “An appeal is taken by obtaining an order therefor, within the delay allowed, from the court which rendered the judgment.” It is incumbent upon the party litigant or his counsel to obtain the order of appeal, and failure to do so is imputable to him. Ratcliff v. Boydell, 566 So.2d 197, 199 (La.App. 4th Cir.), writ denied, 571 So.2d 647 (La.1990); Fidelity Bank & Trust Co. v. Pinewood Country Club, 250 So.2d 577, 578 (La.App. 1st Cir.1971).
The jurisdiction of the appellate court attaches upon the granting of the order of appeal. La. C.C.P. 2088. There can be no appeal absent an order of appeal because the order is jurisdictional. This lack of jurisdiction can be noticed by the court on its own motion at any time. La. C.C.P. 2162; Sammons v. New Orleans Ry. & Light Co., 143 La. 731, 79 So. 320 (1916); Accredited Sur. & Cas. Co. v. McElveen, 93-678, pp1-2 (La.App. 3d Cir.2/2/94), 631 So.2d 563, 564 writ denied, 94-0915 (La.5/20/94), 637 So.2d 483, cert., denied, 513 U.S. 963, 115 S.Ct. 424, 130 L.Ed.2d 338 (10/31/94); Davis v. Funderburk, 274 So.2d 781, 782 (La.App. 3d Cir.1973); Dufrene v. Dufrene, 149 So. 889 (La.App. 1st Cir.1933). We find we have no jurisdiction over the appeal of the September 30 judgment because of the lack of an order of appeal.
As the August 8, 2013 judgment only addressed the award of sole custody to Karl, the remaining assignments of error do not arise from the August 8, 2013 judgment. Therefore, pursuant to Voelkel, this Court lacks jurisdiction over the remaining assignments of error, which are not encompassed within the award of sole custody.

CONCLUSION

We find the trial court did not abuse its discretion in the awarding of custody. Furthermore, we find this court lacks jurisdiction over the remaining assignments of error.

DECREE

The August 8, 2013 judgment of the trial court is affirmed. Cost of this appeal is assessed to the appellant, Kristin Kay Kirsch.
AFFIRMED.

. The initials of the minor children will be used throughout this opinion. See La. URCA Rule 5-2.

. Karl alleges that the exact date was September 5, 2011; Kristin alleges it was September 15,.2011.

. Specifically, the Answer and Reconventional Demand alleged the following: that in December 2010, Karl threatened to kill MK when he accidentally broke a window and pushed Kristin when she tried to interfere; that on September 5, 2011, Karl hit MKwith his belt and put cayenne pepper down his throat, ultimately requiring a trip to the emergency room; That Karl whipped the children with belts; that the children were terrified of their father and panicked when it was time to visit him; that Karl had a history of alcohol abuse; and that Karl had been generally abusive to Kristin since. 2001, choking her, striking her, pulling her hair, and verbally threatening and abusing her.

.Also on December 13, 2011, Karl filed a Motion for Contempt of Court and Modification of Visitation Order, alleging that Kristin had prohibited Karl, from speaking with his children every night as agreed at the October 19, 2011 hearing. A certificate showing that Karl had completed eight sessions of Anger *420 Management & Stress Reduction was filed with the motion. Karl’s Motion for Contempt was resolved at the second HOC on February 13, 2012.

. DCFS produced its confidential records for in camera inspection and verified their authenticity.

. Failure to object timely constitutes a waiver of that objection, and an appellant may not raise the issue for the first time on appeal. Travis v. Spitale’s Bar, Inc., 2012-1366 (La.App. 1st Cir.8/14/13), 122 So.3d 1118, 1134, writ denied, 2013-2409, 2013-2447 (La. 1/10/14), 130 So.3d 327, 329. At trial, counsel for Kristin initially objected to Brown providing opinion testimony because he was not testifying as an expert. Following a sidebar, counsel for Karl qualified Brown as an expert in the criminal investigation of the *422 children’s sexual abuse. Counsel for Kristin and the trial court also questioned Brown; however, after the trial court found that Brown was qualified as an expert in the investigation of sexual abuse of children, no objection to Brown's qualification as an expert was made. Thus, this issue may not be raised on appeal.

. Throughout his testimony, Brown relied on the DCFS records and statements made to him by other people. Louisiana Code of Evidence article 703 provides as follows with regard to opinions and expert testimony:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
Comment (d) to Article 703 adds further that "the facts ... underlying the expert witness’ opinion may properly be ... under designated circumstances, facts ... not admissible in evidence (because, for example, their source is inadmissible hearsay), if they are of a kind reasonably relied upon by experts in the particular field in arriving at their opinions or *425 inferences.” Thus, his reliance on hearsay, because it was of the type that an expert in his field would reasonably rely upon, was proper. See McCain v. Howell, 2006-1830 (La.App. 1st Cir.9/14/07), 971 So.2d 323, 333, writ denied, 2007-2027 (La.12/14/07), 970 So.2d 533; Willie v. Am. Cas. Co., 547 So.2d 1075, 107(La.App. 1st Cir.5/30/89), determination sustained, 553 So.2d 467 (La.1989).

. Though Kristin’s counselor, lisa .Araki, spoke on this matter, the trial court found her to be unreliable and not credible, dué to inconsistencies between her testimony, her records and the DCFS records. In addition, Araki had, at certain times, treated both Kristin and Karl, as well as the children, which she herself testified should have been precluded by a conflict of interest. We agree with ■the trial court’s findings. -