# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2023 CA 0856

DOROTHY ORY

VERSUS

MYLES SMITH, CHURCH MUTUAL INSURANCE COMPANY,
AND THE SHILOH MISSIONARY BAPTIST CHURCH

Judgment Rendered: **AUG 0 8 2024**

\* \* \* \* \* \*

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 648748

Honorable Kelly Balfour, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Todd C. Comeaux<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee<br>Dorothy Ory |
| Sidney W. Degan, III<br>Travis L. Bourgeois<br>Candace C. Chauvin<br>New Orleans, Louisiana<br>-and-<br>Gerard T. Moran<br>Harold J. Adkins<br>Taylor P. Stewart<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellants<br>Myles Smith, Church Mutual<br>Insurance Company, and The Shiloh<br>Missionary Baptist Church |

\* \* \* \* \* \*

**BEFORE: McCLENDON, HESTER, AND MILLER, JJ.**

Hester, J. concurs

**McCLENDON, J.**

In this personal injury case, the defendants appeal the trial court's judgment in favor of the plaintiff following a bench trial on the merits. The defendants also appeal the trial court's judgment denying their motion for new trial or, alternatively, for remittitur. For the reasons that follow, we amend the judgment and affirm, as amended.[1]

## FACTS AND PROCEDURAL HISTORY

On June 1, 2016, Dorothy Ory filed a Petition for Damages against Myles Smith, Church Mutual Insurance Company, and The Shiloh Missionary Baptist Church for the injuries she sustained in an automobile accident on June 6, 2015, in East Baton Rouge Parish. In her petition, Mrs. Ory alleged that on that date she was driving a 2014 Ford Fusion and traveling westbound on Tiger Bend Road. At the same time, Mr. Smith was driving a 2013 Chrysler 300, owned by The Shiloh Missionary Baptist Church and insured by Church Mutual Insurance Company. Mr. Smith attempted to make a left turn onto Tiger Bend Road from a private drive as Mrs. Ory proceeded through the green traffic signal at the intersection at Tiger Bend Road and Antioch Road. Mr. Smith pulled out of the driveway in front of Mrs. Ory's vehicle, resulting in a collision. Mrs. Ory asserted that as a result of the accident she sustained severe personal bodily injury, which has required continuing medical treatment. At the time of the accident, Mrs. Ory was seventy-five years old.

The defendants answered the petition and took Mrs. Ory's deposition on August 15, 2017. On March 5, 2021, Mrs. Ory filed a Motion for Status Conference to select discovery cutoff dates and a trial date.[2] Following a status conference on April 21, 2021,

---

[1] Generally, the denial of a motion for new trial is a non-appealable interlocutory judgment. See LSA-C.C.P. art. 2083. However, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment. **Jackson v. Wise**, 2017-1062 (La.App. 1 Cir. 4/13/18), 249 So.3d 845, 849-50, writ denied, 2018-0785 (La. 9/21/18), 252 So.3d 914. Thus, the interlocutory denial of a motion for new trial is subject to review on appeal in connection with the review of an appealable judgment in the same case. **Id**. Here, it is obvious from the defendants' brief that they were appealing the judgment on the merits. Therefore, we will treat the appeal accordingly.

[2] In the motion for a status conference, Mrs. Ory requested that the trial court give the trial setting preference pursuant to LSA-C.C.P. art. 1573. Article 1573 provides:

> The court shall give preference in scheduling upon the motion of any party to the action who presents to the court documentation to establish that the party has reached the age of seventy years or who presents to the court medical documentation that the party suffers from an illness or condition because of which he is not likely to survive beyond

2

the trial court signed a case management order on April 22, 2021, setting forth several dates, including a discovery cutoff date of August 31, 2021. Thereafter, the originally scheduled trial date was reset to October 31, 2022, following the retirement of the trial judge. The Pre-trial Conference Form, rescheduling the trial date, specifically provided that the trial court "will not be moving [the] trial date again [and] no extensions of discovery deadlines."

On October 31, 2022, the trial court held a bench trial on the merits. Before the trial began, the trial court signed a judgment granting Mrs. Ory's Motion for Summary Judgment on the Issue of Medical Causation as it Relates to Dorothy Ory's Neck, Mid Back, Low Back, Left Shoulder, Left Knee, Abdomen, Headaches, and Left Thumb Injuries.[3] As another preliminary matter, the trial court took up a motion to continue filed by the defendants.[4] After argument, the trial court denied the motion to continue.

The trial began, and the parties offered their exhibits, all of which were introduced without objection. Mrs. Ory offered several exhibits, which included numerous medical records and the deposition transcripts of five of her treating physicians, Dr. Craig Greene, Dr. Rasheed Ahmad, Dr. Kyle Girod, Dr. Joseph Turnipseed, and Dr. Richard Stanger. Mrs. Ory also introduced into evidence the Joint Stipulation signed by the parties that first described the accident and then specified that Mr. Smith was "100% at fault for causing [the] automobile collision" with Mrs. Ory on June 6, 2015; that Mr. Smith was a permissive user of the Chrysler vehicle owned by The Shiloh Missionary Baptist Church that he was driving when the automobile collision occurred on June 6, 2015; that the liability insurance policy issued by Church Mutual Insurance Company to The Shiloh Missionary Baptist Church was in full force and effect on June 6, 2015; and that liability coverage was being afforded on behalf of Mr. Smith for the automobile collision of June 6, 2015.

After the introduction of evidence, the testimony of Mrs. Ory, and the argument of counsel, the trial court took a brief recess and thereafter rendered judgment in favor

---

six months, if the court finds that the interests of justice will be served by granting such preference.

[3] Mrs. Ory's motion for summary judgment was previously heard and granted on October 11, 2022.

[4] The motion to continue was fax-filed on October 28, 2022, and filed into the record on November 3, 2022.

3

of Mrs. Ory and against the defendants.[5] The trial court found Mrs. Ory to be very credible, including the explanation of her injuries, the reason for a gap in her treatment, and what future medical treatments she intended to undergo.[6] The trial court found that it was more probable than not that Mrs. Ory would incur future medical expenses with regard to her neck and lumbar spine pain and awarded the following damages as a result of the June 6, 2015 automobile accident:

| | |
|---|---|
| Past Medical Expenses | $ 178,410.38 |
| Future Medical Expenses | $ 569,331.00 |
| Past Physical Pain and Suffering | $ 400,000.00 |
| Future Physical Pain and Suffering | $ 200,000.00 |
| Loss of Enjoyment of Life | $ 100,000.00 |
| Future Mental Anguish | $ 100,000.00 |
| TOTAL DAMAGES | $1,574,741.38 |

On December 13, 2022, the trial court signed a judgment in conformity with its ruling. Thereafter, the defendants requested written reasons for judgment, which were provided on December 20, 2022.[7] On December 27, 2022, the defendants filed a Motion for New Trial or, in the Alternative, Motion for Remittitur. After a hearing on February 27, 2023, the trial court denied the motion for new trial and signed a judgment on March 8, 2023.[8]

---

[5] The defendants offered three exhibits into evidence: an October 18, 2019 medical note; a March 12, 2020 medical note; and a February 23, 2021 medical note. The defendants did not offer any testimony at trial.

[6] Mrs. Ory testified that, in addition to the pandemic, the gap in her treatment was due to the fact that her husband had a stroke about two to three years earlier, and she had been his caregiver. She also testified that after the accident, but prior to his stroke, Mr. Ory became her caregiver. Mr. Ory passed away on October 12, 2022.

[7] In its written reasons, the trial court stated that Mrs. Ory's testimony was credible with regard to her injuries and the pain associated with her injuries, that her testimony that she would seek further treatment for her pain was credible, and, in particular, that she would continue to seek relief for her pain by undergoing a spinal cord stimulator procedure. With regard to her injuries, the trial court found that the doctors' testimony as to Mrs. Ory's past, present, and future medical needs was credible and compelling.

[8] The judgment date of March 8, 2022, is clearly a typographical error and should be March 8, 2023.

4

The defendants filed a suspensive appeal, regarding both the December 13, 2022 and March 8, 2023 judgments, and allege the following assignments of error:

1. The trial court erred in denying the defendants' motion to continue the trial when Mrs. Ory introduced new evidence beyond the discovery cut-off date and disclosed only twelve days before trial;

2. The trial court erred in failing to enforce its scheduling orders and in allowing late-discovered documents to be submitted into evidence;

3. The trial court erred in granting partial summary judgment based on evidence that was not timely submitted under the scheduling orders and should have been excluded;

4. The trial court erred in awarding damages that were based on incompetent evidence and are otherwise excessive; and

5. The trial court erred in denying the defendants' motion for new trial or remittitur.

## DISCUSSION

### Assignments of Error 1-4
### The Admissibility of the Deposition Testimony

Initially, we point out that all of the defendants' assignments of error relate to their argument that the trial court erred in allowing the plaintiff to submit evidence that should have been excluded. The defendants allege that the trial court erred in allowing the five depositions, all taken after the discovery cutoff date, to be introduced into evidence.

With regard to their first assignment of error and the denial of their motion to continue, the defendants contend that they were prevented from obtaining an expert or at least an independent medical examination to enable them to present a proper defense to the recommendations of Dr. Stanger and Dr. Turnipseed that Mrs. Ory undergo future medical procedures, which recommendations were disclosed less than two weeks before trial. The defendants maintain that Mrs. Ory obtained entirely new evidence after the discovery cutoff date in violation of the trial court's scheduling order. According to the defendants, this untimely and newly-obtained evidence was clearly prejudicial to them.

5

Particularly, the defendants argue that in their depositions Dr. Stanger and Dr. Turnipseed changed their previous position, providing new recommendations as to future surgeries, and that this change was the only evidence of future medical costs. Therefore, the defendants argue that the depositions should have been excluded. They also aver that because these depositions were allowed into evidence, the trial court erred in failing to grant a continuance. Accordingly, we will first determine whether the depositions of Dr. Stanger and Dr. Turnipseed were properly admitted into evidence.[9]

Mrs. Ory took the deposition of Dr. Joseph Turnipseed on October 17, 2022, and the deposition of Dr. Richard Stanger on October 18, 2022. The October 3, 2022 notices sent to the defendants were specifically titled "Notice of Trial Deposition" and provided that the depositions were being taken "as the taking of the testimony" of the doctors. The deposition transcripts were introduced and admitted into the record without any objection by the defendants when offered by Mrs. Ory into evidence.[10]

At trial, a party must make a timely objection to evidence that a party considers to be inadmissible and must state the specific ground for the objection. LSA-C.E. art. 103(A)(1);[11] LSA-C.C.P. art. 1635.[12] The reason for this rule is to afford the trial court an opportunity to prevent or correct prejudicial error. **Melancon v. Garon**, 2014-1532 (La.App. 1 Cir. 4/24/15), 2015 WL 1882732, *5 (unpublished).

---

[9] We note that if a trial court commits an evidentiary error that interdicts its factfinding process, this court must conduct a *de novo* review. Thus, any alleged evidentiary errors must be addressed first on appeal, inasmuch as a finding of error may affect our applicable standard of review. **Barnett v. Woodburn**, 2020-0675 (La.App. 1 Cir. 4/16/21), 324 So.3d 641, 646.

[10] In fact, when asked by Mrs. Ory's counsel if he had any objection to the introduction into evidence of her exhibits, counsel for the defendants stated, "No. I have no objection. I have no objections on the list that he sent me. That is all fine and dandy."

[11] Louisiana Code of Evidence Article 103(A)(1) provides:

> **A. Effect of erroneous ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
> **(1) Ruling admitting evidence.** When the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of objection.

[12] Louisiana Code of Civil Procedure Article 1635 provides:

> Formal exceptions to rulings or orders of the court are unnecessary. For all purposes it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.

Furthermore, LSA-C.C.P. art. 1450(A)(5) provides:

A. At the trial ... any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

* * *

(5) However, any party may use the deposition of an expert witness for any purpose upon notice to all counsel of record, any one of whom shall have the right within ten days to object to the deposition, thereby requiring the live testimony of an expert. The objecting counsel of record shall pay in advance the fee, reasonable expenses, and actual costs of such expert witness associated with such live testimony. The fees, expenses, and costs specified in this Subparagraph shall be subject to the approval of the court. The provisions of this Subparagraph do not supersede Subparagraph (A)(3) nor Code of Evidence Article 804(A). However, the court may permit the use of the expert's deposition, notwithstanding the objection of counsel to the use of that deposition, if the court finds that, under the circumstances, justice so requires.

Thus, LSA-C.C.P. art. 1450(A)(5) permits any party to use an expert witness's deposition for any purpose upon notice to all counsel of record, "any one of whom shall have the right within ten days to object to the deposition, thereby requiring the live testimony of an expert." Further, Article 1450(A)(5) provides that "the court may permit the use of the expert's deposition, notwithstanding the objection of counsel to the use of that deposition, if the court finds that, under the circumstances, justice so requires." Consequently, a trial court has much discretion under Article 1450 in determining whether to allow the use of deposition testimony at trial, and its decision will not be disturbed on review in the absence of an abuse, of that discretion. **Sullivan v. City of Baton Rouge**, 2014-0964 (La.App. 1 Cir. 1/27/15), 170 So.3d 186, 193.

In the case *sub judice*, Mrs. Ory provided the notice requirements as set forth in LSA-C.C.P. art. 1450(A)(5), and the defendants did not object within ten days to the Notice of Trial Deposition for the expert testimony of Dr. Stanger and Dr. Turnipseed. Thus, we find no abuse of discretion or error in the admission of the depositions of Dr. Stanger and Dr. Turnipseed in lieu of their live testimony. See **Lapuyade v. Rawbar, Inc.**, 2015-705 (La.App. 5 Cir. 4/13/16), 190 So.3d 1214, 1218, writs denied, 2016-0908, 2016-0916, 2016-0917 (La. 9/6/16), 199 So.3d 610, 611.

We also recognize that the deposition testimony of Dr. Stanger and Dr. Turnipseed was not in conflict with their medical records. Dr. Stanger is Mrs. Ory's treating neurosurgeon. His medical note from the Neuromedical Center on July 18, 2019, as well as on October 18, 2019, showed that Mrs. Ory's cervical MRI revealed multilevel spondylosis and associated cord flattening at C5-6 and C6-7. Dr. Stanger's medical notes also indicated that Mrs. Ory suffered from facet arthritis and multilevel foraminal stenosis with regard to her neck. As to Mrs. Ory's low back pain, her lumbar MRI revealed spinal stenosis and foraminal stenosis at L4-5. Dr. Stanger also indicated that a compression fracture at L2 appeared chronic and unchanged. Additionally, there was disc bulging and protrusions with multilevel facet arthritis elsewhere.

Dr. Stanger's plan of treatment on July 18, 2019, was the following:

> Her lumbar MRI shows spondylolisthesis at L4-5 with associated facet arthropathy, foraminal narrowing, and stenosis. This is the primary culprit behind her claudication symptoms and lower back pain. Ideally, a transforaminal lumbar interbody fusion [TLIF] would correct this offset. Given her age, this big surgery is something we would want to avoid. She would be a candidate for a smaller surgery, L4-5 laminotomy and decompression, to help with her nerve pain. For her neck, she would be a candidate for an ACDF [anterior cervical discectomy and fusion].

Further, Dr. Stanger's medical notes for Mrs. Ory's visit on October 18, 2019, state that the visit was a follow-up to make a plan for surgery, as Mrs. Ory's pain was so severe she was having trouble with her activities of daily living. Specifically, Dr. Stanger stated that he and Mrs. Ory discussed lumbar surgery and that Mrs. Ory told him that she had discussed the recommended surgery with Dr. Turnipseed, and he agreed with the surgery plan.[13]

---

[13] Additionally, on review of Dr. Turnipseed's deposition testimony, we point out that it was counsel for the defendants who asked Dr. Turnipseed, Mrs. Ory's pain management doctor, whether Mrs. Ory needed future medical care. Counsel for the defendants asked:

> Q. Okay. What type of treatment from a pain management perspective will she need if she doesn't get – let's say she doesn't get the surgery. I understand she's been recommended for surgery, the AC –
>
> A. ACDF.
>
>          * * *
>
> Q. Will she need any kind of further treatment?
>
> A. Well, she had the laminectomy for her back, and all it did was help her leg. It didn't help her back. Say she has – let's do it in a scenario.
>
> Q. Okay.
>
> A. Say she has her neck surgery – and he's probably going to have to do a multilevel fusion, ACDF – and say that helps her neck and she's better and that's manageable

After reviewing the record, we find that although there were concerns about Mrs. Ory's age, Dr. Stanger and Dr. Turnipseed did not rule out the possibility of surgery and discussed the possibility of surgery as early as 2019. Therefore, the recommendations for surgery in the doctors' testimony were not "entirely new recommendations" and were in the doctors' medical records since at least July of 2019. Accordingly, we find no abuse of discretion or error by the trial court's denial of the defendants' motion to continue the trial and find no merit in the defendants' first assignment of error.

We also find no merit to the defendants' argument in their second assignment of error that the trial court erred in failing to enforce its scheduling orders. Specifically, the defendants maintain that since the five depositions at issue were taken after the discovery deadline, all of the depositions were improperly introduced into evidence and should be excluded. However, as previously stated, when the depositions were introduced into evidence, there were no objections. Further, the depositions of Dr. Stanger and Dr. Turnipseed were clearly taken for the perpetuation of trial testimony and not for the purposes of discovery. No timely objection was made to the use of the depositions by the defendants in lieu of live trial testimony. The depositions of Dr. Greene, Dr. Girod, and Dr. Ahmad, taken by the defendants after the discovery cutoff date, were also introduced into evidence without any objection.[14]

The defendants additionally argue, in their third assignment of error, that the trial court erred in granting the partial summary judgment based on evidence that should have been excluded. Specifically, the defendants again assert that the depositions of Dr. Girod, Dr. Greene, and Dr. Ahmad, attached to Mrs. Ory's motion for partial summary judgment on the issue of medical causation, should not have been permitted into evidence as they were taken after the discovery cutoff date. Therefore, according to the defendants, because the depositions should have been excluded, Mrs. Ory failed to carry her initial burden of proof on the motion for summary judgment.

---

and gets her back to where her neck was years before the accident. I've already tapped out everything that I can do for her lower back. The next step for that, from my standpoint, if [Dr.] Stanger or [Dr.] Girod is not going to be operating on her back, would be a spinal cord stimulator for the lower back, if her neck gets better.

[14] The defendants took the deposition of Dr. Kyle Girod on October 6, 2021, the deposition of Dr. Craig Greene on October 21, 2021, and the deposition of Dr. Rasheed Ahmad on December 7, 2021, for all purposes.

Mrs. Ory filed her motion for summary judgment on the issue of medical causation on August 9, 2022. In support thereof, Mrs. Ory offered the depositions of Dr. Girod, Dr. Greene, and Dr. Ahmad. The defendants opposed the motion for summary judgment. However, the defendants made no objection to the introduction of these depositions in their opposition to the motion for the partial summary judgment as required by LSA-C.C.P. art. 966(D)(2).[15] Therefore, because no objection was made in accordance with LSA-C.C.P. art. 966(D)(2), the trial court correctly considered the deposition testimony. See **Pottinger v. Price**, 2019-0183 (La.App. 1 Cir. 10/23/19), 289 So.3d 1047, 1052. Accordingly, we find no merit to the defendants' argument that the trial court erred in considering the depositions of these doctors when ruling on the motion for summary judgment.

Next, as part of their fourth assignment of error, the defendants contend that the trial court's awards for special and general damages were unsupported, based on their argument that the deposition testimony submitted in support of the awards was untimely under the trial court's scheduling order and should have been stricken. Having found that the five depositions were properly admitted into evidence, we find no merit to the defendants' argument. However, also as part of their fourth assignment of error, the defendants make the alternative argument that the amount of the damages awarded by the trial court was excessive. Therefore, we will review the special and general damage amounts awarded.

### Assignment of Error 4
### Damages

Special damages

Special damages are those which have a ready market value, such that the amount of damages theoretically may be determined with relative certainty. Awards of special

---

[15] When Mrs. Ory filed her motion for partial summary judgment as to medical causation on August 9, 2022, LSA-C.C.P. art. 966(D)(2) provided:

> The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider.

10

damages, including medical expenses, are reviewed under the manifest error standard. **Baack v. McIntosh**, 2020-01054 (La. 6/30/21), 333 So. 3d 1206, 1215.

Here, the defendants do not dispute the $178,410.38 amount awarded for past medical expenses. However, the defendants contend that the award of $569,331.00 for future medical expenses was only supported by the late-discovered testimony that should have been excluded. Therefore, they argue, the amount awarded is overly speculative and not supported by the record.

The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence the future medical expense will be medically necessary. **Menard v. Lafayette Ins. Co.**, 2009-1869 (La. 3/16/10), 31 So.3d 996, 1006. Although an award for future medical expenses must be established with some degree of certainty, such awards generally do not involve determining the amounts, but turn on questions of credibility and inference. Therefore, much discretion is accorded to the factfinder's evaluation of expert testimony. **Baack v. McIntosh**, 333 So.3d at 1216.

Having found that Dr. Stanger and Dr. Turnipseed's testimony was not late-discovered evidence and was proper trial testimony, we find that Mrs. Ory proved by a preponderance of the evidence through her doctors' testimony that the future medical expenses were medically necessary. The trial court specifically found that the testimony of the doctors regarding Mrs. Ory's past, present, and future medical needs was credible and compelling. This evidence was not contradicted by the defendants. Nevertheless, the trial court did not award future medical expenses for both the TLIF and the spinal cord stimulator for Mrs. Ory's lower back issues, as requested by the defendants. The trial court specifically found that the TLIF was not warranted, but did find that the spinal cord stimulator was necessary.

Mrs. Ory presented evidence that the estimated cost of the four-level ACDF (anterior cervical discectomy and fusion) was $152,827.80.[16] In addition, Mrs. Ory presented evidence of the estimated costs of the spinal cord stimulator implant, which

---

[16] We note that in their closing argument, the defendants did not dispute the necessity of the ACDF, stating, "[t]hat was in the records."

11

included the cost of the spinal cord stimulator trial and cost of the generator, for a total of $415,504.00. Together, these amounts total $568,331.80. The trial court awarded $569,331.00 for future medical expenses.[17] On our review, we point out that in her Pre-Trial Brief, Mrs. Ory incorrectly listed the cost estimate for the four-level ACDF as $153,827.00, rather than the $152,827.80 amount. Accordingly, having found an error in calculation by the trial court, we amend and reduce the trial court's award for future medical expenses by $1,000.00, from $569,331.00 to $568,331.00.

General damages

General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms. **Jones v. Market Basket Stores, Inc.**, 2022-00841 (La. 3/17/23), 359 So.3d 452, 464. Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. **Id.**

The trier of fact, whether judge or jury, has much discretion in the assessment of damages. LSA-C.C. art. 2324.1. This discretion, however, is not unfettered. **Pete v. Boland Marine and Manufacturing Company, LLC**, 2023-00170 (La. 10/20/23), 379 So.3d 636. The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its much discretion in assessing the amount of damages. **Pete**, 379 So.3d at 638-39.

Recently, the supreme court revisited the question of how appellate courts are to review general damage awards. In **Pete**, the supreme court stated that the inherently subjective nature of the abuse of discretion standard in the context of reviewing general damage awards compelled that some measure of objectivity be incorporated into the determination of an award's reasonableness, so that there is some standard for comparison. The supreme court therefore held that an appellate court must consider relevant prior general damage awards as guidance in determining whether a trier of fact's

---

[17] When asked by the trial court, the defendants acknowledged that they did not present any cost estimate for the bladder incontinence procedure recommended for Mrs. Ory.

award is an abuse of discretion. Before this decision, appellate courts considered relevant prior damage awards only after finding an abuse of discretion, a method which the supreme court found overly subjective and, as a result, meaningless. **Pete**, 379 So.3d at 638-39, 643.

The supreme court went on to explain that a review of prior awards is a starting point in evaluating whether a general damage award is an abuse of discretion, since courts must also consider the specific facts and circumstances of each case. Specifically, the court explained:

> We do not abandon the two-step analysis for the appellate review of a general damage award but modify the analysis as follows. The question of whether the trier of fact abused its discretion in assessing the amount of damages remains the initial inquiry. However, to evaluate this issue, an appellate court is to include a consideration of prior awards in similar cases, as well as the particular facts and circumstances of the case under review. If an abuse of discretion is found, the court is to then also consider those prior awards to determine "the highest or lowest point which is reasonably within that discretion."

**Pete**, 379 So.3d at 644 (citation omitted).

In the present matter, Mrs. Ory was awarded a total of $1,574,741.38. Of that amount, the trial court awarded $400,000.00 for past physical pain and suffering, $200,000.00 for future physical pain and suffering, $100,000.00 for loss of enjoyment of life, and $100,000.00 for future mental anguish. The defendants first argue that the $200,000.00 award for "future pain and suffering" and the additional award of $100,000.00 for "future mental anguish" are duplicative. However, we point out that the defendants incorrectly label the trial court's award. Specifically, the trial court made an award for "future **physical** pain and suffering" as opposed to just "future pain and suffering." (Emphasis added). Thus, the trial court differentiated between "future physical pain and suffering" and "future mental anguish" in its awards.

Courts commonly list different elements of general damages, including mental anguish and physical pain and suffering, both past and future, separately. **McGee v. A C And S, Inc.**, 2005-1036 (La. 7/10/06), 933 So.2d 770, 774-75. In **Travis v. Spitale's Bar, Inc.**, 2012-1366 (La.App. 1 Cir. 8/14/13), 122 So.3d 1118, 1132, writs denied, 2013-2409, 2013-2447 (La. 1/10/14), 130 So.3d 327, 329, this court recognized that in personal injury cases, general damage itemization varies, stating that courts may combine

or separate physical and mental pain and suffering, combine or separate past and future pain and suffering, or reflect mental anguish as mental pain and suffering or mental suffering and emotional distress. Thus, physical and mental pain and suffering and mental anguish are two compensable identities of general damages that refer to the pain, discomfort, inconvenience, anguish, and emotional trauma that accompanies an injury. **Travis**, 122 So.3d at 1133; **McGee**, 933 So.2d at 775. Accordingly, considering the differentiation between future physical pain and suffering and future mental anguish in this matter, we do not find the award duplicative.[18]

However, because of the defendants' alternative argument that the amount of the damages awarded by the trial court was excessive, we will review the general damages awarded. Additionally, in reviewing an attack on a general damage award, the entire damage award is reviewed for an abuse of discretion. **Travis**, 122 So.3d at 1132.

The record reflects that Mrs. Ory suffered significant, life-changing injuries resulting from the June 6, 2015 accident. Mrs. Ory was seventy-five years old at the time of the accident and eighty-two years old at the time of the trial. She testified that before the accident, she and her husband frequently went out, including going to dinner three to four times a week. Mrs. Ory also testified that she and her husband would often travel, including trips to Denver, Colorado to visit their son. Mrs. Ory stated that prior to the accident she worked on their four acres, riding the lawnmower and maintaining the flower beds. She also did all the housework, including cooking and cleaning.

After the accident at issue, Mrs. Ory's social life ended. Mrs. Ory testified that she stayed in the house and in her bed for most of the first four months after the accident. She stated that she suffered severe headaches and lost forty-five pounds as a result of abdominal cramping and incontinence, none of which she suffered prior to the accident.[19]

---

[18] We find the cases cited by the defendants to be distinguishable. Although in the case of **Oden v. Gales**, 2006-0946 (La.App. 1 Cir. 3/23/07), 960 So.2d 114, 122, this court stated that "[t]o some extent, an undifferentiated award of general damages for 'pain and suffering' may be duplicative of an award for 'mental anguish' deriving from the same injury," such is not the case before us. In both the **McGee** and **Oden** cases, cited by the defendants, the differences between awards for "pain and suffering" and for "loss of enjoyment of life" were discussed. Moreover, in the present matter, the awards were differentiated between future mental anguish and future physical pain and suffering.

[19] Ms. Ory testified that the accident caused the seatbelt to thrust her forward, resulting in pain and bruising in the area of her stomach. After the accident, Baton Rouge Emergency Medical Services records noted a small mass in Mrs. Ory's pelvic area, and a CT scan at Our Lady of the Lake Regional Medical Center revealed a subcutaneous induration consistent with a seatbelt injury.

Mrs. Ory also testified that she suffered numbness in her hands and damage to her wrists, preventing her from doing work in her home and yard. Additionally, Mrs. Ory stated that she suffered dental issues because of the accident, which resulted in several tooth extractions.

In her testimony, Mrs. Ory described the accident, stating that she was thrown around the car when hit and that her head hit the windshield. Her airbag deployed. Mrs. Ory testified that she could not exit her vehicle because of the damage to the vehicle door, and Mr. Smith tried pulling her through the driver's side window, while her seatbelt was still fastened, pulling on her left shoulder and arm. In addition, Mrs. Ory stated that she lost consciousness after the accident.

East Baton Rouge Emergency Medical Services transported Mrs. Ory to the emergency room of Our Lady of the Lake Regional Medical Center (OLOL). At OLOL, Mrs. Ory complained of severe pelvic and lower abdominal pain and bruising, left wrist pain with bruising and numbness, left shoulder pain, back pain, neck pain, and nausea. Mrs. Ory was observed overnight and discharged early the next morning.

Thereafter, Mrs. Ory followed up with her primary care physician, Dr. Linda Stewart. Dr. Stewart referred Mrs. Ory to Baton Rouge Orthopaedic Clinic for evaluation of her bilateral wrist pain, knee pain, and shoulder pain. Dr. Greene treated Mrs. Ory for her knee, wrist, and shoulder issues; Dr. Ahmad treated Mrs. Ory for her thumb and wrist issues; and Dr. Girod treated Mrs. Ory for her neck pain, mid-back pain, and lower back pain. All three doctors are orthopedists with Baton Rouge Orthopaedic Clinic and, in their depositions, were qualified as experts in the field of orthopedics or orthopedic surgery.

Dr. Ahmad testified that Mrs. Ory had arthritis in both hands, but suffered a distal radius fracture and a broken bone in her left wrist from the June 6, 2015 accident. On August 5, 2016, Dr. Ahmad performed corrective surgery, called a trapeziectomy with ligament reconstruction tendon interposition, on Mrs. Ory's left thumb and wrist.

Mrs. Ory initially saw Dr. Greene on July 27, 2015, with complaints of bilateral wrist pain and shoulder pain. Mrs. Ory was given a steroid injection for her shoulder pain to help with the inflammation, and Dr. Greene ordered physical therapy. With regard to

Mrs. Ory's neck pain, x-rays showed degenerative changes in her cervical spine. Dr. Greene ordered an MRI and recommended that Mrs. Ory follow-up with Dr. Girod.

Mrs. Ory first saw Dr. Girod on August 10, 2015, with complaints of neck pain, mid-back pain, and lower back pain. X-rays of Mrs. Ory's neck and low back showed degenerative changes and a chronic compression fracture in her lower back. Arthritis was evident with some instability. Dr. Girod ordered MRIs of Mrs. Ory's neck and low back, which showed spondylolisthesis, bulging discs, but no acute disc herniation. However, Dr. Girod was of the opinion that the pain he was treating Mrs. Ory for was caused by the June 6, 2015 accident. Thereafter, Dr. Girod referred Mrs. Ory to Dr. Turnipseed for pain management.[20]

Dr. Turnipseed first examined Mrs. Ory on May 23, 2017. Ultimately, Dr. Turnipseed performed ten different procedures between June 1, 2017 and September 28, 2018, in an attempt to alleviate Mrs. Ory's pain, which included four cervical epidural steroid injections, one lumbar medial branch nerve block at L3/L4, L4/L5, and L5/S1 bilaterally, a cervical medial branch nerve block at C3/C4, C4/C5, and C5/C6 on the left side, three radiofrequency ablation procedures of the lumbar dorsal medial branches at L3/L4, L4/L5, and L5/S1 (one on the right side and two on the left side), and one radiofrequency ablation procedure of the cervical dorsal medial branches at C3/C4, C4/C5, and C5/C6 on the left side, which gave Mrs. Ory some, but not prolonged, relief.[21] Dr. Turnipseed testified that Mrs. Ory had previously been treated by Dr. Girod for her neck pain, who had suggested a multi-level cervical fusion (the four-level ACDF). Dr. Turnipseed agreed with Dr. Girod's recommendation, but because Mrs. Ory was hoping for something less aggressive, Dr. Turnipseed referred Mrs. Ory to Dr. Stanger, a neurosurgeon, for a second opinion. Dr. Turnipseed believed that minor surgery was unlikely to be beneficial considering the significant findings on Mrs. Ory's cervical MRI.

---

[20] In his deposition, Dr. Girod was asked if he ever considered surgery for Mrs. Ory during her three visits with him. Dr. Girod responded that Mrs. Ory was a long way from that and that she was not a surgical candidate at that time. We note that Mrs. Ory's last visit with Dr. Girod was on July 6, 2016, thirteen months after the accident.

[21] Dr. Turnipseed described the radiofrequency ablation procedure as the burning of the nerves that go into the facet joints with a hot needle in order to de-nerve the joints.

Further, as to Mrs. Ory's lower back pain, while some procedures improved her pain for a time, the low back pain persisted. Dr. Turnipseed referred Mrs. Ory to Dr. Stanger for her lower back pain as well, stating that what he had been doing for Mrs. Ory was no longer working. In his testimony, Dr. Turnipseed again recommended a TLIF to correct Mrs. Ory's lower back pain, but, as an alternative, suggested the spinal cord stimulator, which was a much less intrusive and less risky procedure than the TLIF.

In his deposition, on cross examination, Dr. Turnipseed explained, "I don't think that these shots and epidurals and nerve blocks and nerve burns are going to do any much more good. We've already tapped that out." When asked about more injections for Mrs. Ory, Dr. Turnipseed opined:

> They initially worked, but they quit working. You know, like I said, I think the best thing for her – you know, best case scenario, she gets her neck fixed, right? Hopefully that will offer her relief. In order to avoid a lumbar fusion, we could put a stimulator in her and, you know, try to buy her five to ten years, you know, to have, at least, a comfortable life.

With regard to her treatment with Dr. Stanger, Mrs. Ory was initially seen on May 23, 2019. Dr. Stanger's medical records reveal that Mrs. Ory had complaints of neck pain radiating down into her left arm, back pain, headaches, and bladder control issues. Mrs. Ory had already undergone multiple procedures for the pain she was suffering in her cervical and lumbar spine. Dr. Stanger ordered updated MRIs, which were performed on June 18, 2019.

Dr. Stanger's medical records also show that on July 18, 2019, he met with Mrs. Ory to review the imaging and discuss with Mrs. Ory her treatment options. Dr. Stanger noted that at this point, Mrs. Ory was having severe neck and lower back pain and was having trouble with her activities of daily living, including walking. He testified that the previous injections and procedures performed by Dr. Turnipseed had provided only minimal relief. Dr. Stanger testified, in his deposition, that typical treatment for Mrs. Ory's back issues would be a TLIF. He stated that Mrs. Ory was seventy-nine years old at that time and not a big fan of any surgery, but major surgery was discussed, including the pros and cons. The plan was to first try a smaller surgery to try to decompress the nerves to give them some room so Mrs. Ory could stand and walk better. Mrs. Ory made the decision to have the bilateral L4-5 laminotomy and foraminotomy on her back, which

17

was performed on January 13, 2020.[22] At her follow-up appointment on March 12, 2020, Mrs. Ory stated that the pain in her back was somewhat better, but "by no means was it all corrected."

With regard to Mrs. Ory's neck issues, Dr. Stanger testified that Mrs. Ory was a probable candidate for a four-level ACDF (anterior cervical discectomy fusion).[23] At that point, however, Mrs. Ory's back pain was the biggest concern. When asked if any of his opinions changed with regard to the need for future surgery, Dr. Stanger replied that they had not.

At trial, Mrs. Ory testified that she still has headaches, neck pain, back pain, and incontinence issues.[24] She stated that the back pain is there almost all of the time, with tingling, numbness, and radiating pain. Mrs. Ory testified that she planned to have the recommended procedures for her neck and back as soon as she could.

With these injuries in mind, we now consider prior relevant general damage awards, as directed by the supreme court, as guidance in determining whether the trial court's awards were an abuse of discretion.

In **Rentrop v. Arch Insurance Company**, 2017-0635 (La.App. 1 Cir. 12/29/17), 241 So.3d 357, 370, this court affirmed an award of $1,025,000.00 in general damages, finding that amount was not an abuse of the trial court's discretion.[25] The plaintiff, a school bus driver, sustained injuries to his neck and back in a collision with a garbage

---

[22] Dr. Stanger described the surgery as "drilling away from the bone to remove some ligament to create space around the nerves to relieve pressure."

[23] Dr. Stanger described the ACDF as a procedure on the neck where the spine is approached from the front of the neck. Dr. Stanger would make a small linear incision, retract the airway to the side, and examine each disc to clean the spinal cord and the nerves. He testified that in that space, he would put a small bone graft, all in an attempt to open the vertebrae and take pressure off of the nerves and the spinal cord. Dr. Stanger testified that this procedure would be performed on each of the four discs. Then a small titanium plate would be inserted at the front to hold it all still to allow the bones to fuse together and heal.

[24] Mrs. Ory consulted with Dr. William A. Anderson of Gastroenterology Associates, L.L.C. as a result of her complaints of fecal and urinary incontinence after the June 6, 2015 accident. After a follow-up visit, and apparently the resolution of Mrs. Ory's fecal incontinence, Mrs. Ory was referred to a urologist regarding her complaints of urinary incontinence. Mrs. Ory was treated by Dr. Robert Taylor with Louisiana Urology, L.L.C., who then referred Mrs. Ory to Dr. William Kubricht for a pessary evaluation. The medical records of Dr. William Kubricht document Mrs. Ory's struggle with urinary incontinence and bladder dysfunction, and Mrs. Ory discussed with Dr. Kubricht her treatment options. Mrs. Ory advised Dr. Kubricht that she desired the pessary after recommended Mona Lisa Touch Fractional CO2 Laser therapy.

[25] In **Rentrop**, the plaintiff was awarded $450,000.00 for physical pain and suffering, past, present, and future; $250,000.00 for mental pain and anguish, past present and future; $125,000.00 for disability and disfigurement; and $200,000.00 for inconvenience, loss of gratification of/or intellectual and/or physical enjoyment of life and loss of lifestyle, for a total of $1,025,000.00 in general damages. **Rentrop**, 241 So.3d at 364.

18

truck. Prior to the collision, the plaintiff had been active fifty-nine-year-old man who frequently enjoyed outdoor activities and had no pain in his back or neck. After the accident, the plaintiff was unable to walk at a normal pace and had to walk with a cane because he had problems balancing. Further, the plaintiff's relationship with his family changed and he was no longer able to play with his grandchildren. Additionally, the plaintiff had attended thirty-one physical therapy sessions and had undergone two surgeries, which helped to alleviate, but did not resolve, his pain.

In **Hollenbeck v. Oceaneering Intern., Inc.**, 96-0377 (La.App. 1 Cir. 11/8/96), 685 So.2d 163, 173, writ denied, 97-0493 (La. 4/4/97), 692 So.2d 421, decided almost thirty years ago, the plaintiff suffered a ruptured disc and a bulging disc after a fall. The plaintiff underwent a laminectomy and discectomy for the ruptured disc, but would continue to experience low back pain on a permanent basis. Considering the plaintiff's young age, his back pain, and physical restrictions, this court determined that a general damages award of $350,000.00 was not an abuse of the trial court's vast discretion.

In **Collatt v. Boudreaux**, 2019-103 (La.App. 3 Cir. 11/25/19), 2019 WL 6482247, *11 (unpublished), the plaintiff endured twenty months of cervical and lumbar pain prior to a two-level anterior cervical discectomy and fusion surgery following an automobile accident. The plaintiff's physicians also projected that she would need a two-level lumbar surgery in the future. The third circuit found the jury's award of general damages to be abusively low and reversed the trial court's partial denial of the plaintiff's motion for judgment notwithstanding the verdict. Given the nature of the plaintiff's injuries and the length of time that she had treated and suffered with pain, as well as considering her total body impairment, the third circuit increased the general damage award to the plaintiff from a total of $180,000.00 to $400,000.00.

In **Daigle v. City of Shreveport**, 46,429 (La.App. 2 Cir. 10/5/11), 78 So.3d 753, 759, writ denied, 2011-2472 (La. 2/3/12), 79 So.3d 1027, an older plaintiff with a history of neck and back pain suffered injuries to her neck and back following a slip and fall on wet paint. A nerve block procedure was not helpful in relieving the plaintiff's pain. What was periodic pain before the accident became nonstop after the fall, and the plaintiff was told she could live with the pain or she could have surgery. The plaintiff's doctor stated

19

that she needed an anterior cervical discectomy and fusion on her cervical spine at C4/C5 and that on her lumbar spine she would need a minimal access 360-degree fusion at L2/L3 and L3/L4. The plaintiff reported that she wanted to schedule the surgeries in approximately one year, after she retired. **Daigle**, 78 So.3d at 769-70. The trial court awarded the plaintiff $200,000.00 for loss of enjoyment of life and $400,000.00 for pain and suffering for a total of $600,000.00 in general damages.[26] The second circuit found the trial court's award of damages to be reasonable. While recognizing that the awards for loss of enjoyment of life as well as for pain and suffering were admittedly high, the second circuit stated that the plaintiff's life has drastically changed since the 2005 slip and fall. She could no longer enjoy many of the things she once did, including time with her grandchildren, other family members, and friends. She also lived in constant pain, and even after the surgeries, would likely continue to have some pain and physical limitations. **Daigle**, 78 So.3d at 770-71.

In this matter, Mrs. Ory has already undergone ten separate procedures in attempts to alleviate her pain. Significantly, all the doctors who have treated Mrs. Ory relate her injuries to the June 6, 2015 accident. Although Mrs. Ory clearly had preexisting degenerative changes in her spine, those changes were aggravated and became symptomatic after the accident. Dr. Stanger and Dr. Turnipseed both recommended a four-level ACDF for her cervical spine. Additionally, a TLIF was also recommended with regard to Mrs. Ory's lumbar spine, although a spinal cord stimulator was also recommended as an alternative. Mrs. Ory testified that she is ready to have the surgeries, as her back pain has become constant and is affecting her activities of daily living. She is in constant pain, has a hard time walking, and can no longer do the things she liked to do prior to the June 6, 2015 accident.

Considering the above jurisprudence, and the particular facts and circumstances of the case before us, and given the much discretion granted to the trier of fact, we cannot say that the trial court abused its discretion in awarding $800,000.00 in general damages. The evidence presented at trial, which was not contradicted, supports the

---

[26] The trial court also awarded the plaintiff $463,501.70 in special damages: $10,815.70 for past medical expenses and $452,686.00 for future medical expenses. **Daigle**, 78 So.3d at 769.

award under these specific circumstances, and we are unable to find that it exceeds the highest reasonable awards in cases involving similar injuries. Further, the trial court was in a superior position to observe and review the demeanor of Mrs. Ory and evaluate her credibility, and we must give great weight to its factual conclusions. See **Rentrop**, 241 So.3d at 370. Accordingly, we find no abuse of discretion.

## CONCLUSION

Considering the above, we amend the December 13, 2022 judgment of the trial court to reduce the award for future medical expenses from $569,331.00 to $568,331.00 and enter judgment in the total amount of $1,573,741.38. In all other respects, the judgment is affirmed. All costs of this appeal are assessed to the defendants, Myles Smith, Church Mutual Insurance Company, and The Shiloh Missionary Baptist Church.

**JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.**